## RUSSELL B. KEELER v. JOHN SALISBURY.

To ratify an unauthorized act performed by an agent, it is sufficient if the principal, with knowledge of .what has been done by the agent, consents to be bound by it, and unequivocally manifests such intent to the other party.

*It seems*, a promise to pay a smaller sum than that which is due, to extinguish an existing debt, does not operate as an extinguishment of the same, even where the promise is reinforced by additional security from the debtor's own means.

But where such promise is reinforced by the procurement of a third person to become surety for him by engaging his personal credit or pledging his property for the payment of the sum agreed, &c., it is a compromise operating by way of accord and satisfaction to extinguish the original debt.

Where the wife joins with her husband in executing a mortgage to secure the payment of the reduced amount which the creditor agreed to accept in payment of the original demand, the pledge of her inchoate right of dower for such payment is sufficient to convert the transaction to an accord and satisfaction, by which the original claim is extinguished.

Where money is due by the condition of a bond, and the defendant has a right to discharge it by bringing the principal and interest into court, an accord and satisfaction by parol may be set up against it.

APPEAL from a judgment of the Supreme Court. The action was on a penal bond executed by the defendant to the plaintiff, conditioned for the payment of $2,911 and interest, by certain installments. It was dated April 1, 1839. The defense was payment; and that, on the 19th of April, 1842, after certain payments had been made on account, but not sufficient to satisfy the installments which had become payable, an agreement had been made by which, in consideration that the defendant would mortgage to the plaintiff a piece of land of thirty-six acres, as further security for the debt, which then amounted, with interest, to above $3,000, the plaintiff would reduce the debt to $2,500 and relinquish the residue. The questions principally litigated on the trial related to the existence and legal effect of that agreement.

It appeared that the bond sued on was given for the purchase price of a lot of land of about one hundred and nineteen acres in Middlesex, Yates county, sold by the plaintiff, for which the defendant gave the plaintiff a mortgage on the lot, collateral with the bond.. The plaintiff resided in Ridge-

field, in Connecticut, and he had a nephew, one L. Hoyt, settled in Middlesex, where the defendant lived, to whom he intrusted the bond and original mortgage, and who was accustomed to receive payments from time to time from the defendant. A few months before the alleged agreement. for reducing the debt, the plaintiff came to Yates county, where one or more interviews were had between him and the defendant, at which Hoyt was present. The latter claimed to have become embarrassed in his affairs, and involved in debts, and to be unable to pay the mortgage debt, and offered to give up the lot and his improvements in order to be discharged, or, if that could not be done, desired that the plaintiff should relinquish a portion of the debt, insisting that he had given too much for the land, and that it had depreciated in value. The plaintiff entertained the proposal to take back the land, and said he would do so if he could make an arrangement with a certain Mr. Smith to purchase it from him. If he could not arrange with Smith, he would reduce the debt upon receiving additional security upon thirty-six acres of other land owned by the defendant. He added that he would leave the papers with Hoyt, and the defendant must go to him. Before anything further was done, a suit to foreclose the original mortgage was commenced, through the agency of Hoyl, about the 7th March, 1842 ; but before judgment was obtained, and on the 19th of April following, an arrangement was made between the defendant and Hoyt, by which the suit was discontinued, the defendant paying the costs and also executing a mortgage on the thirty-six acres conditioned for the payment of $2,500, Hoyt at the same time giving to the defendant a paper in the following words : " In consideration of John Salisbury (defendant) executing to me a mortgage upon thirty-six acres of land in Middlesex, Yates county, as collateral security for the payment of twenty-five hundred dollars and annual interest of the same, specified in a certain bond and mortgage from the said Salisbury to me, bearing date the first day of April, 1839, and according to the terms specified in the said bond and mortgage, I hereby release and discharge said Salisbury from the payment of the sum intended to be secured

by said bond and mortgage above the sum of twenty-five hundred dollars. Witness my hand this 19th day of April, 1842. Lorenzo Hoyt, for Russell B. Keeler" (plaintiff). Hoyt, on his examination on behalf of the plaintiff, testified argumentatively, that he was not authorized by the plaintiff to make this arrangement, but that he communicated it to the plaintiff by letter a few months after it was made. The mortgage on the thirty-six acres was executed by the defendant, and was also signed and acknowledged by his wife, and was placed on record by Hoyt, who at the same time made an indorsement on the mortgage in these words: "Rec'd, April 19, 1842, on the within mortgage, all excepting twenty-five hundred dollars. L. Hoyt, for R. B. Keeler." Hoyt, on his examination, said the foreclosure suit was commenced by the plaintiff's direction, in a letter which he wrote the witness, which letter was lost. He could not remember whether he had received more than one letter from the plaintiff before the arrangement. The defendant also paid the costs of the foreclosure suit.

It appeared that the plaintiff was at Middlesex and saw Hoyt in 1843; and that he sometimes had the original bond and mortgage in his possession, and that at other times they were in the hands of Hoyt.

The defendant gave in evidence a letter to himself, written by the plaintiff, from his residence in Connecticut, of the date of April 29, 1846, in which he acknowledged the receipt of a remittance by draft, and gave a list of the indorsements on the mortgage up to that time, in which he included the one of April 19th, 1842, " of all except $2,500."

Payments were made and indorsed subsequently to those mentioned in the letter, and separate receipts were sometimes given; and there was a controversy on the trial whether some of these evidences of payments were not duplicates, and, as to one of them, whether the indorsement was for the true amount paid.

The judge charged, that if Hoyt had authority from the plaintiff to enter into the arrangement to reduce the debt to $2,500, that it was a valid agreement, and operated to

reduce the same accordingly; and moreover that if he had not such authority, but the plaintiff, after the agreement came to his knowledge, ratified it, it was equally binding upon him; that if the jury believed that the plaintiff and defendant, at their interview shortly prior to the agreement to reduce the debt, had made a conditional agreement to that effect, and that the agreement which Hoyt and the defendant had made came to his knowledge afterwards, he was bound to disavow it to the defendant, and that he was moreover bound to release the mortgage on the thirty-six acres to the defendant, and that his omission to do so was evidence upon the question of ratification. The plaintiff's counsel excepted to the several propositions of the charge above mentioned. He also desired that the jury should be charged that if the aforesaid agreement was made by authority of the plaintiff, it was not valid or operative, either as a release of the residue of the debt, or by way of accord and satisfaction, and he excepted to the refusal thus to instruct the jury. The verdict was for the plaintiff for $241.04.

There were several exceptions to the rulings of the judge in taking the testimony, which, so far as they are material to be mentioned, are referred to in the opinion.

Pending the suit, there was an offer by the defendant to allow the plaintiff to enter judgment for a sum larger than the amount of the verdict, which was refused. The judgment awarded costs to the plaintiff to the time of the offer, and to the defendant for the proceedings subsequently, and that the latter be set off, &c. After an affirmance by the General Term the plaintiff brought this appeal.

*David B. Prosser*, for the appellant.

*E. G. Lapham*, for the respondent.

DENIO, Ch. J. There was evidence sufficient to be submitted to the jury, both of an original authority to Hoyt to enter into the arrangement for reducing the debt, and of a subsequent ratification of that agreement, supposing there had been a want of original authority. Such a contemplated

arrangement had been discussed between the parties' in the presence of Hoyt, when the plaintiff was in Yates county, and the plaintiff had referred the defendant to Hoyt as a person with whom he might transact his business respecting the mortgage debt. Nothing, however, was immediately done, and Hoyt, by the plaintiff's direction, caused a foreclosure suit to be instituted. Soon after it was commenced, it was discontinued as parcel of the agreement to reduce the debt to $2,500. Whether Hoyt had any further communication with the plaintiff before he assumed to enter into that agreement, he does not remember; but the plaintiff was informed of the agreement not long after it was concluded, and he does not appear ever to have informed the defendant that he repudiated it, or objected to it. On the contrary, when he had occasion four years afterwards to make a statement of the credits to which the defendant was entitled, he sends him a copy of the entry made by Hoyt on the mortgage, without the slightest suggestion that it was made without authority, or was not binding on him. He never returned or offered to return the mortgage on the thirty-six acres, though his agent had placed it on record, and there is no reasonable pretense that he was ignorant of what had been done respecting it. I do not understand Hoyt to testify distinctly that he had no authority from the plaintiff to make the agreement. He says indeed that the bond and original mortgage were left with him when the plaintiff was in Yates county, a few months before the agreement was made, and that he was then told to do nothing relating to the business until he should hear from the plaintiff. He was afterwards directed by the latter to commence a foreclosure, but the letter is lost, and he cannot remember whether he received another letter from the plaintiff before the agreement was entered into, or not. Taking this testimony in connection with the subsequent conduct of the plaintiff, it would be difficult to believe that the agreement was made contrary to his direction, or without his knowledge or consent. But if it was, it was optional with him whether he would repudiate it, or ratify and act under it. It is not necessary to constitute a ratification

that an act should be done which would create a technical estoppel upon the party ratifying. It is enough that with a knowledge of what the agent has done in his name, he should consent to be bound by it, and manifest such intent to the other party, in an unequivocal manner. (Story on Agency, §§ 252, 256; *Armstrong* v. *Gilchrist*, 2 Johns., 424.) I conclude, therefore, that the instructions were not objectionable, as having been made without evidence on which to base them.

As to the merits of the defense, supposing the facts to be established: It is very clear that the payment of a less sum than the amount of a debt owing by the party paying, though received in full satisfaction, is not an extinguishment of the demand, whether it were created by simple contract or by specialty. (*Fitch* v. *Sutton*, 5 East, 230; *Harrison* v. *Close*, 2 Johns., 448; *Dederick* v. *Sewall*, 9 id., 333; *Mechanics' Bank* v. *Hazard*, 13 id., 353; *Seymour* v. *Minturn*, 17 Johns., 169.) As actual payment of the smaller sum would not discharge the debt, a mere promise to make such payment would, of course, fail to extinguish it; and it has been held that it would be equally inoperative to produce that result, though the engagement were reinforced by additional security furnished by the debtor from his own means, as by a mortgage on his real estate. (*Platts* v. *Walrath*, Lalor's Supp., 59.) But if the debtor procure a third person to become surety for him by engaging his personal credit or pledging his property for the payment of the sum agreed to be paid, or by other creditors accepting a similar compromise of their own demands, it is a composition operating by way of accord and satisfaction, to extinguish the original debt. (*Steinman* v. *Magnees*, 11 East, 399; *Boyd* v. *Hitchcock*, 20 Johns., 76; *Douglass* v. *White*, 3 Barb. Ch., 621.) The case from 20 Johns. presented the question sharply upon a plea of accord and satisfaction of a less amount secured by an accommodation indorser, which plea was sustained on demurrer; and the judgment does not appear to have been questioned in any subsequent case.

In the case before us, the wife of the debtor joined in the mortgage given for the reduced amount, which the creditor

agreed to accept as a compromise of the original debt. By this act, she pledged her inchoate right of dower, which was in no manner liable for her husband's debts, in order to aid him in effecting the compromise which was to relieve him from his pecuniary difficulties. The law, equally with common fairness in dealing, obliges the creditor to abide by an arrangement thus made.

The plaintiff's counsel maintains that the arrangement cannot be sustained, because the written agreement signed by Hoyt does not require the defendant's wife to join in the new mortgage. The papers appear to have been executed at the same time, and they are all parts of the same transaction. When we see that the wife joined in the mortgage, we must intend, the contrary not appearing, that this was parcel of the entire arrangement; and we cannot say that the compromise would have been assented to by the plaintiff's agent, if that circumstance had been absent.

There may have been some doubt whether, by the terms of the agreement, the $2,500 named in it was assumed as the amount of the original debt, or as the sum due at the date of the agreement. But the plaintiff's counsel omitted to present that point to the consideration of the judge, and there was no ruling in respect to it. Error cannot, therefore, be predicated of the judgment on that account, if the true construction was not adopted by the jury. As the new mortgage was for that precise amount, and bore date on the day the arrangement was made, and drew interest from that day, the better opinion, I think, would be, that it was intended to represent the whole amount which was eventually to be paid. The former mortgage, it is true, was not extinguished, but the effect of the arrangement was, that it was to stand as a security only for that amount as of the day the agreement was made.

A technical principle is urged: that the debt being evidenced by a specialty, an accord and satisfaction by a parol writing cannot be set up against it. The same point was insisted on in *Strang* v. *Holmes* (7 Cow., 224), where land was conveyed to the creditor under an agreement that it should

be received in satisfaction of an amount due by the condition of a penal bond. The old authorities were examined by Judge SUTHERLAND, in giving the opinion of the court; and it was held, that, although the objection might apply where the action was upon a single bond, yet, where the money was due by the condition of a bond, the defendant having, by statute, a right to be discharged by bringing the principal and interest into court, an accord and satisfaction by parol might be set up against it.

The other exceptions taken in the course of the trial present no serious difficulties. Mr. Taylor, the defendant's attorney, was examined as a witness on his behalf, to prove the amount due on the bond according to the defendant's theory as to the indorsements and receipts. On a cross-examination by the plaintiff's counsel, he admitted having at an earlier period made another calculation of the amount. It appeared that there had been a payment made on the 15th April, 1846, the amount of which was a matter of controversy. The plaintiff's counsel inquired of the witness at what sum he reckoned that payment in such prior calculations. It was objected to, and the answer excluded, on the ground that he was privileged as counsel from answering it. The circumstances showed that this first estimate was made in the course of an examination of the papers with a view to the defense of the action. The question was clearly incompetent. The cross-examination was foreign to the matter which the witness had sworn to in his testimony in chief. That was only of an arithmetical deduction from the assumptions which he made as to the payments. It proved nothing as to the existence of these payments. The cross-examination was intended only to raise an argument against the accuracy of these assumptions, by showing that in the former estimate he had taken a different view as to one of the payments. It would have proved nothing to the purpose, if it had been answered in the manner desired.

The defendant was permitted to prove, against the plaintiff's objection (the ruling being excepted to), the admission of Hoyt, made in conversation with a witness, as to the terms

of the arrangement of April 20th, 1842. I think the testimony was objectionable on account of the agreement being in writing, and because, if that were otherwise, the declaration of the agent by whom it was made, when not engaged in the business of the agency, was not competent evidence to prove its provisions; but the testimony was of no possible moment, for all which was shown by these admissions was precisely coincident with the agreement, as shown by the written papers which were the evidence of it. The paper signed by Hoyt, and the mortgage of the thirty-six acres, proved every material fact which Hoyt was shown to have confessed.

The defendant was permitted to prove, against the plaintiff's objection, that he was in embarrassed circumstances when the agreement for reducing the debt was made. No formal exception appears to have been taken to this evidence, in the first instance, though it is said to have been objected to when a similar question was asked of another witness, and the case states that there was the " same ruling and exception;" and the evidence showed that he was reputed to be embarrassed. I do not see how it could be competent to prove that the defendant was in a pecuniary situation which rendered it probable that such an agreement would be made. But the agreement itself and the facts proved to show the plaintiff's assent to it were all in writing, and the evidence which was given under this ruling was of the slightest possible weight. I feel very reluctant to award a new trial on the admission of this testimony, and am inclined to hold that no sufficient exception was taken.

The plaintiff offered to prove that at a certain time after the execution of the mortgage on the thirty-six acres, the plaintiff and Hoyt were together at the house of Hoyt's mother, in Middlesex, and that Hoyt there offered to deliver that mortgage to the plaintiff, and that he refused to receive it, declaring that he would have nothing to do with it. The evidence was excluded on the defendant's objection, and the plaintiff excepted. The witness was subsequently permitted to and did prove that the plaintiff did not receive the instru-

ment. It was not offered to be shown that the transaction proposed to be proved ever came to the knowledge of the defendant. The only material point of the evidence thus offered was the declaration of the defendant by which he repudiated the mortgage. It had taken whatever effect it ever had, prior to this occasion, by being received by the plaintiff's agent and placed on record. The declaration was not, I think, evidence upon the question of ratification. The agency of Hoyt had ended so far as the taking of the mortgage was concerned; and it was not competent for these parties to create evidence upon the question of ratification by anything they could say or do between themselves.

The other exceptions relate to the charge, and have been disposed of by the preceding observations.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.