PRICE v. KEYES *et al.*

*Practice — motion for new trial upon exceptions first heard at. general term — power of court — Evidence — presumption in favor of verdict — Damages — value of real property — Agency — fraud of agent toward principal — ratification.*

Where a motion for a new trial is made at the circuit or special term, an application may also at the same time be made for a new trial because of the misdirection of the court, or for the reason that the verdict has been rendered either without or against the evidence. There is nothing in the Code by which this power of the court has been abrogated or abridged. *Parker* v. *Jervis*, 3 Keyes, 271, doubted.

But where the motion is ordered to be heard on the exceptions in the first instance at the general term, while that order remains in force the special term has no power to hear a motion for a new trial. And under such an order the general term can review the exceptions alone, and the point cannot be considered as to whether or not the verdict was rendered without or against the evidence.

Plaintiff gave a power of attorney to S. and to another to sell real estate in California. This was sold in 1853 by S. for $140,000. In an action against S. and others for damages, it was claimed by plaintiff that this sale was made by the defendants for their own benefit. *Held*, that evidence that the property was worth in 1849 $300,000, and an offer had been made of that amount for it, it appearing that plaintiff had made improvements, and the property was situated in a place where property was inclined to advance, was relevant.

The court at trial refused to charge that there was no evidence of a certain fact. *Held,* that the court at general term could not say that there was no such evidence, the case containing no statement that all the evidence was inserted in it.

The court was asked to charge that if defendants believed, at the time of making it, that such sale was for the best interests of plaintiff, he could not recover. The justice answered that the proposition was in the main true, but added that if the motive which operated upon defendants was not an honest discharge of their duty toward plaintiff, but was the consideration of obtaining a sum of money to themselves, and that was their object in selling, the action could be sustained. *Held*, no error.

The justice refused to charge that plaintiff had so long acquiesced in the transaction before bringing this suit that he should be precluded from bringing it and be held to have acquiesced in what the defendants had done, and charged that the action was maintainable at any time, and plaintiff could not be held to have acquiesced so as to prevent the remedy the law would give him. The justice held also that the plaintiff's delay after the receipt of an account current and knowledge of the sale was not an acquiescence, and that

the rule concluding a principal as to the correctness of an account rendered was not applicable unless plaintiff knew it in time to prevent its consummation and the divesting of his legal title. *Held*, no error.

The sale was made June 30, 1853. *Held*, that it was not error to allow the jury to regulate the amount of their verdict according to the value of the property during the residue of that year.

It did not appear that plaintiff approved of the act of defendants in selling the property, or of the acts of the purchasers in appropriating a part of the proceeds to the payment of his debts, and derived no benefit from those acts in any other way and had no information as to what had been done to his prejudice. *Held,* that he could not be considered to have ratified the acts.

One who wrongfully disposes of another's property cannot discharge himself from liability by applying the proceeds to pay the owner's debts without his authority.

EXCEPTIONS ordered to be heard in the first instance at the general term. The action was brought by Rodman M. Price against Erasmus D. Keyes and Edmund Scott, who were impleaded with Theodore Payne and Squire P. Deny, to recover damages for the alleged fraudulent and wrongful sale, in 1853, of certain real estate, the property of plaintiff, situate in California. The necessary facts appear in the opinion.

*J. S. L. Cummins* and *Ashbel Green,* for plaintiff.

*John Chetwood,* for defendant Keyes.

*Fullerton, Knox & Crosby,* for defendant Scott.

DANIELS, J. When the trial of this cause was completed at the circuit, the learned justice who presided ordered the exceptions, taken by the defendants, to be first heard at the general term, and judgment to be in the meantime suspended. The order in this respect was strictly in conformity with the provision made by section 265 of the Code of Procedure, and it was probably made, as such orders usually are, as a matter of practice, at the instance or solicitation, and to promote what may at the time have been considered the convenience, of the defendant. It is not important for the disposition of the case whether that was the fact or not, because the consequences of the order would be the same, even if it had been made at the instance of the learned justice himself; but such orders are not usually made in that way, particularly where the

defeated party manifests any disposition to withhold his assent. No such dissent appears to have been indicated in the present case, and it is to be presumed that none existed.

By the order made, the case was, in effect, sent to the general term for two purposes. First, to enable the defendants to move for a new trial upon their exceptions; and secondly, for judgment to be pronounced there in case the motion should prove unsuccessful. Where exceptions are taken, the Code has provided for three different modes of reviewing them; it may be done by an appeal from the judgment, by a motion for a new trial upon them at the general term, under such an order as was made in this case, and by a motion for a new trial at the circuit or special term. In the latter instance, an application may also at the same time be made for a new trial, because of the misdirection of the court, or for the reason that the verdict has been rendered either without evidence or against the evidence appearing in the case. Code, § 265; *Macy* v. *Wheeler*, 30 N. Y. 231. This court has always possessed that power, and there is nothing in the Code by which it has either been abrogated or abridged. A different view of the law was suggested by the judge who delivered the opinion in *Parker* v. *Jervis*, 3 Keyes, 271, but it was not necessary for the decision of the case, and probably was not concurred in by the other members of the court. *Smith* v. *Ætna Ins Co.*, 49 N. 211, 216. Several years after the order was made, directing the exceptions in this cause to be first heard at the general term, such an application was made to the special term by the present defendants; it was opposed because of that direction, but the objection was overruled by the court, and the application was formally heard and denied. Both parties have appealed from the order which was then made, the plaintiff claiming that the application should not have been heard at all, on account of the direction which was given to the case at the circuit, and the defendants insisting that the verdict should have been set aside and a new trial ordered.

While the unqualified power to hear a motion for a new trial after verdict has been given to the special term, its exercise has not been reserved in a case where a previous direction has been made that the motion shall be heard on the exceptions, in the first instance, at the general term. Such an order, as well as the provision of the law allowing it to be made, contemplates a different course of proceeding after it has been made, and that is, that the

motion must be first heard at the general term and the judgment on the case be there pronounced. The provision of the Code, contained in the section already referred to, is mandatory on this subject. And yet, if the special term can entertain and dispose of a motion for a new trial while an order continues in force, sending the exceptions in the first instance to the general term, the force and effect of that provision can be at once defeated. For, if the verdict can be set aside by the special term, the exceptions cannot be heard at the general term, and judgment cannot be given there, if the case proves to be in such a condition as to require that disposition to be made of it. In that way, the practice devised by the Code for one purpose could be made the means of nullifying its provision for another. That could not have been the design of any part of the system created by it. By giving the court the power to send the case on the exceptions, in the first instance, to the general term, it must have been intended, when such a direction should be given, that the entire case, so far as it might involve a review of the trial, would be there considered and disposed of. This necessarily follows from the nature of the direction given, and the disposition to be made upon the hearing of the case, unless a new trial be ordered; then judgment must be ordered upon the verdict. This operates as a restriction on the general power conferred upon the special term to hear and determine motions for a new trial. That allows that practice to be pursued except wnen such an order has been made as was directed in this case, and then the implication is clear that the case must be heard and disposed of by the general term. *Beattie* v. *Niagara Savings Bank*, 41 How. 137. The special term, therefore, should have dismissed the application made to it for a new trial, instead of hearing and denying it. *Devoe* v. *Hackley*, 3 Robt. 679; *Morange* v. *Morris*, 20 How. 257, 263.

The only remedy available to the defeated party, where an order the been made, sending the case, in the first instance, to the general term, while that direction remains undisposed of, is to bring on the motion for a new trial before that court. And that, from the nature and terms of the direction, must be heard only upon the exceptions taken during the trial. The right to move in the first instance at the general term is reserved exclusively to a class of cases dependent solely upon the law. For it is only legal points which can be raised and presented by exceptions; and it is the exceptions, and nothing beyond them, which the court is permitted

to order to be first heard at the general term. They are the subjects which that court is required to hear, and upon their being found to be well taken a new trial must be directed, while if they are unsustained the court must pronounce judgment in favor of the successful party. Code, § 265. Exceptions can be taken only to rulings made by the court during the progress of the trial. They cannot be presented to the conclusions of the jury, and do not bring up the point for consideration, whether or not the verdict has been rendered either without or against the evidence. Upon the hearing of the exceptions, in the first instance, by the general term, that point cannot be brought before the court. *Hoxie* v. *Green*, 37 How. 97; *Cronk* v. *Canfield*, 31 Barb. 171; *Hotchkins* v. *Hodge*, 38 id. 117; *Dickerson* v. *Wason*, 48 id. 412; *Sheaf* v. *Utica & Black River R. R. Co.*, 2 N. Y. Sup. 388.

The action was brought to recover damages arising out of the wrongful sale and conveyance of a large amount of real estate, owned by the plaintiff, and disposed of by the present defendants, as his agents. The property sold and conveyed, consisted of nineteen different lots or parcels of land, and an undivided half of two other parcels of land. It was incumbered by mortgages upon a portion of it, and by judgments which were liens upon all of it, to an amount exceeding the sum of $100,000, and it was sold, in one mass, for the nominal sum of $135,000, but in reality for the sum of $140,000, the additional $5,000 being added for the payment of commissions. The sale was made by the co-operation of both the present defendants, and the title conveyed by the defendant, Scott, under a power of attorney given by the plaintiff to him on the 3d of December, 1852, empowering him to sell any real estate owned by the plaintiff in the State of California. In the submission of the case to the jury, the court instructed them that the defendants could not be held liable for any error of judgment on their part or the part of either of them, or for injudiciously making the sale in order to avoid the effect of an attachment law taking effect the next day, under which the plaintiff's non-resident creditors could attach and seize his property for the non-payment of their debts, but that they could only be held liable for designedly selling his property for their own benefit, or for the purpose of depriving him of its benefit. This, though not in the terms, was the substance of the charge, so far as it presented the mere point of liability.

When the plaintiff rested his case, each of the defendants moved

for a dismissal of the complaint. The motion was denied, and the defendants severally excepted. No reason was specified for which a dismissal was claimed to be proper. But, without any doubt, the point should be regarded as taken, that the evidence was not sufficient to warrant a recovery upon the theory alone on which the action was rendered dependent; and that was whether these defendants had sold and conveyed the plaintiff's property for the fraudulent purpose of despoiling him of it, and for the promotion of their own personal interests as distinguished from his. To that extent the exception taken requires the consideration of the effect of the evidence then before the court, but no farther. For whether the ruling was proper or not as to the other defendant, who was one of the two joint purchasers of the property, it is not necessary to inquire, as the verdict of the jury was in his favor.

Before the power of attorney was given to the defendant Scott, and in the month of September, 1851, another was given by the plaintiff to the other defendant, Keyes. This was not quite as extended in its authority as the one delivered to Scott, for the power it gave to sell was confined to any part or parcel of the plaintiff's real estate situated in the State of California. The contract for the sale was made and executed on the last day of June, in the year 1853. During the early part of the preceding month, and for some time before that, the defendant Keyes was in and about the city of New York, and represented to the plaintiff that his creditors were generally well disposed toward him ; substantially, that he had nothing to apprehend from them so far as this property was concerned, and that his prospects in, its management and final sale were promising. Before this defendant left the city of New York, on his return to San Francisco, and by a letter written and sent during his passage, he solicited from the plaintiff a power of attorney more complete in its authority than the one he then had. Such a power was afterward executed and sent by mail to this defendant, but it was not received by him until after the contract for the sale of the plaintiff's property had been made. And there is reason for believing that the contract was made by the defendant Scott, instead of the defendant Keyes, with whom the plaintiff's relations seem to have been more intimate and confidential, for the reason that his power of attorney was broad enough to sanction a sale of the property in one mass, while that to Keyes would not do that. By the contract made for the sale of the property, its entire price was

appropriated to the payment and extinguishment of the incumbrances upon it, except the sum of $10,000, for the obligation to pay the other $5,000 was not inserted in it, and that difference, after being received by Scott, was paid to Keyes as commissions and afterward divided between them both. In afterward accounting for the sale and the disposition of the $10,000 received from its proceeds, that was simply shown as having been received by Scott and then paid over to Keyes, without any explanation or allusion whatever to the other $5,000. But three debts, not liens upon the property at the time of the sale, are mentioned by Scott in a letter, not in the case, but referred to by the justice in his charge, and probably accompanying the account, as having been compromised by Keyes for $5,000, paid by himself apart from any money due on the sale; while Keyes, in his letter of the 31st of July, stated that he understood these debts had been settled, but did not know how it had been done. These inconsistencies in their statements were calculated to throw very grave suspicions over the defendants' conduct in making the sale, and suggest the probability that they had been guilty of some undisclosed misconduct. And when added to the representations which Keyes made before he left for California, his solicitude for a broader power of attorney, and the circumstance that the plaintiff was not and could not be possibly benefited by the sale, and that the two agents concurred in making it and dividing the only money derived from it between them, it would seem to be entirely sufficient for the consideration and action of the jury, upon the inquiry whether the defendants were not guilty of the misconduct with which they were charged by the plaintiff. There was nothing, therefore, in the exceptions taken to the refusal to nonsuit, and they must accordingly be overruled.

The witness, Van Nostrand, was allowed to state what was the value of this property in 1849, against the objection of the defendants that it was irrelevant. This followed the statement made by the same witness, that an offer of $300,000 was then made for the property, and Keyes disapproved of selling for that amount. The answer was, that the property was then worth that amount. And it was not irrelevant, because the condition and value of the property was generally traced down to the time of the sale, and evidence was given as to the extent to which it was improved by the plaintiff in the meantime. This evidence, though remote, had some bearing upon the inquiry as to the value of the property when the sale was

made, particularly as it was situated in a thriving, prosperous city where property was inclined to advance rather than recede in value.

The court did not hold that the evidence, admitted against the other defendants, was admissible against the defendant Scott. But the ruling was, that all letters and conversations prior to the sale were competent evidence, without specifying as to whom it should apply; and that, when competent for any purpose, it should be received, but whether it should finally be considered as testimony proper to be submitted against all the defendants, would depend upon what had or should transpire before the evidence closed. There could be no impropriety in this course, as the defendants were jointly charged with a fraudulent sale of the plaintiff's property. It was not held that evidence, not admissible against either defendant, could be received; but that, so far as the evidence was proper against either, it should be received and afterward properly distinguished and applied by the court, as the case proved should require that to be done. Neither defendant could be injured by that course in the end, and it was the most convenient that, under the circumstances, the court could adopt. Other exceptions were taken to the ruling of the court on the subject of receiving and rejecting evidence. But they are not relied upon in support of the present motion, and if they were, no reason appears for doubting the correctness of the decisions by which they were disposed of by the court.

Evidence was given during the progress of the trial from which the plaintiff claimed that the fact was established that he requested the defendant Keyes to have his property sold in parcels and not as one mass. The defendant Scott requested the court to instruct the jury that there was no evidence that this instruction ever came to his knowledge. That the court declined to do, leaving the question to the jury. And the defendant Scott excepted to that disposition of the point. As the case is now presented to the court, there is no direct evidence contained in it that this instruction was communicated to the defendant Scott before the sale was made. But this court cannot say there was no such evidence, because the case contains no statement that all the evidence was inserted in it; *Cox* v. *James*, 45 N. Y. 557; while the charge of the court shows that an important letter, received from Scott soon after the sale, and containing some reference to it, was used as evidence on the trial, which the case does not contain. Even this letter may have con-

tained something from which it might be inferred that Keyes did communicate to Scott the instructions received by him from the plaintiff. It did appear, during the trial, that the relations existing between these two defendants were probably friendly and confidential, and that they certainly were engaged in the common enterprise of disposing of the plaintiff's property, not for his, but rather for their own exclusive benefit. And if the jury believed that to be the fact, as they clearly might under the circumstances, then the inference would not be strained nor unnatural, that Keyes, before the sale, communicated every thing to Scott which had transpired between himself and the plaintiff, having any thing to do with the success of the undertaking by which he was to be deprived of his property for the purpose of securing the payment of their commissions as his agents. There was no error in leaving the inquiry, whether this was so or not, to the decision and determination of the jury. It was the inference of one fact which might reasonably be drawn from others, and for that reason strictly within their province. *Justice* v. *Lang,* 52 N. Y. 323.

Upon the subject of the defendants' liability, after directing the jury that the defendants could only be held liable for intentional misconduct in the disposition which was made of the plaintiff's property, the learned justice was asked to charge, that if the defendants, Keyes and Scott, believed, at the time of making the sale in question, that such sale was best for the interest of the plaintiff, he cannot recover in this action. The justice responded that the proposition was, in the main true, but added that if the motive which operated on these men was not an honest discharge of their duty toward the plaintiff — if they were moved upon by the consideration of obtaining this $13,500 or $18,500 to themselves, or a smaller portion to one of them and a larger portion to the other, and that was their object in selling, then the action can be sustained against them. This proposition was right, for it rendered the liability of the defendants dependent upon the fact that they sold the plaintiff's property — not for him, but for themselves. In other words, that they could only be held to be liable in case they appeared to have appropriated his interest in the property to their own use and benefit. That proposition, certainly, must be sound; otherwise, the agents could appropriate their principal's property to their own use, and escape all liability for the wrong they should do him. There was no substantial difference between this ruling and the principle men-

tioned in the charge, by which the plaintiff's right to recover was made to depend upon the fact that the defendants must be found to have intentionally wronged him in the sale made of his property. It, as well as the entire charge, was as favorable to the defendants as they had any reason to require or expect.

The learned justice was also requested to hold and charge, that the plaintiff had so long acquiesced in this transaction before bringing this suit, that he should be precluded from bringing it, and should be held to have acquiesced and to have been satisfied with what all the defendants had done. He responded that he held the contrary of that, and added that if the jury found that the fraud was perpetrated, and this action was maintainable at any time, if he had chosen to bring it in two months or six months after the transaction came to his knowledge, he had just the same right in six years afterward, and it could not be held that he acquiesced in any such sense as to prevent the remedy which the law would give him, if his rights had been assailed or injured by any fraudulent sale by these parties. The same proposition was again repeated in nearly the same terms after the charge had been delivered. He was then requested to hold that Price's delay, after the receipt of the account current and the knowledge of the sale, was an acquiescence in the sale, and that therefore, as matter of law, the plaintiff could not recover any thing beyond the value of the property, deducting the moneys paid out by Scott and Keyes for his benefit. The justice declined to charge these propositions, as well as the one first presented on the same subject, and held in substance, in the course of his charge, that the rule which would conclude a principal as to the correctness of account rendered, was not applicable to this transaction, unless he knew of it in time to prevent its consummation, and to prevent himself from being divested entirely of the legal title to his property. The defendants excepted to the refusal of the learned justice to charge as requested, and also to the propositions held by him to be the law.

There can be no doubt as to the correctness of the refusals, because the requests required him to hold that there had been such acquiescence, as matter of fact, as would prevent the plaintiff from maintaining the action. No such fact was established by the evidence, and it could not, therefore, be properly regarded as proved in the case. The learned justice was also right in holding that the law, relating to the effect of an account stated, had no application

in this case.  For, although an account had been rendered to the plaintiff, with the letters of the defendants, mentioning the sale, it contained so little of this transaction as to give no adequate idea of what had been done; it simply showed that a sale had been made for $135,000, and that Scott had received and paid over to Keyes $10,000 of the price, the residue being applied to the extinguishment of incumbrances.  Nothing was stated of the receipt and disposition of the other $5,000.  And the important fact that the defendants had made the sale simply to obtain their commissions, and had divided the amount received between them, was not disclosed, but concealed under the assurance that the property had been disposed of for the plaintiff's benefit.  There was, evidently, nothing in the case from which the plaintiff could be said to have approved, at any time, of that disposition of his property.

The evidence of Dewey showed that the $5,000, paid beyond the amount mentioned in the contract of sale, did not go into the hands of either of the defendants.  It was not paid by either of them upon his debts, but by the purchasers, with the defendants' assent, to relieve the property sold from attachments served upon it after the delivery of the contract of sale, and that the purchasers seem to have insisted on, as one of the terms on which they were willing to fill the contract and take the property.  The court held that if the plaintiff acquiesced in that, the amount paid should be deducted from what the defendants might otherwise be liable for. That, certainly, was making a very liberal application of the rule defining the effect of acquiescence; since there·was no evidence before the jury, showing that even that disposition of the $5,000 had been brought to the plaintiff's knowledge, and there was none from which he could infer that the debts were paid out of any part of the $10,000; because Scott's letter, as related without objection by the judge in his charge, stated that they were paid by Keyes "apart from any money due by Payne & Co.," who were·the vendees of the property.  To constitute a ratification by means of acquiescence, or the omission to make the unauthorized act of the agent the subject of objection, the principal must have information giving him notice of what may have been done to his prejudice.  This rule is well settled, and, without such information, there can be no ratification in a case like the present one, where the plaintiff received nothing from the transaction, and no part of the proceeds have been applied, with his assent, to his benefit.  Story on Ag., §§ 239, 242;

*Moss* v. *Rossie Mining Co.*, 5 Hill, 137; *Brass* v. *Worth*, 40 Barb. 648; *Murray* v. *Bininger*, 3 Keyes, 107; *Keeler* v. *Salisbury*, 33 N. Y. 648.

The plaintiff, in this case, never appears to have approved of the act of the defendants in selling this property, or in the act of the purchasers in appropriating any part of its proceeds to the payment of his debts, and has, in fact, derived no benefit from either act in any other way. His claim for redress is predicated on an unauthorized, unapproved wrong, for which, if it really existed, his right to satisfaction has in no way been relinquished. *McKnight* v. *Dunlop*, 5 N. Y. 537, 544.

The refusal of the court to give the jury absolute direction, that the defendants should be credited the amount paid out of the proceeds of the sale, upon the verdict they might otherwise render in the case, was strictly conformable to the rule settled upon that subject in this State. According to that rule, a person, who tortiously disposes of another's property, cannot discharge himself from the consequences of his act by applying the proceeds in payment of its owner's debts without his authority or assent. *Hanmer* v. *Wilsey*, 17 Wend. 91; *Otis* v. *Jones*, 21 id. 394; *Hopple* v. *Higbee*, 3 Zabr. 342; *McKnight* v. *Dunlop*, 5 N. Y. 544, *supra*.

The debts, which this portion of the charge referred to, were simply those that were satisfied by the $5,000 which the purchasers at first agreed to pay toward the defendants' commissions and afterward used to compromise and remove the attachments sued out and levied under the law of the State of California, which took effect on the 1st of July. These attachments were not upon the property when the contract for its sale was entered into, and for that reason, were probably subordinate to the rights of the purchasers under it. And they were therefore not within the provision made in the contract of sale, allowing them to discharge the incumbrances out of the purchase-money. The court did not hold that the plaintiff could recover the value of the property without first excluding the incumbrances upon it at the time of the sale. The proposition held, was that the debts, paid by the defendants out of its proceeds, could not mitigate the amount of the recovery unless the plaintiff had acquiesced in the act of payment. And it must have been so understood by the jury, for the amount of their verdict was $129,699.16, which was $10,000 less than the purchase price of the property. And this verdict was rendered nearly eleven years after the sale was made of

the property, and probably included a proper allowance of interest. The debts mentioned in the charge, the payment of which was not allowed to reduce the verdict unless the plaintiff acquiesced in such payment, must necessarily therefore have been understood not to include the incumbrances by mortgages and judgments on the property. This view is further fortified by the evidence given upon the trial concerning the value of the property; for that ranged between the sums of $135,000 and $495,000. And it appeared that the purchasers sold portions of it, soon after the sale, at an important advance beyond the price they paid for it.

The sale was made on the 30th of June, 1853, and the court allowed the jury to regulate the amount of their verdict according to the value of the property during the residue of that year. This property was held by the plaintiff for sale, and there is very little probability that it would have been all disposed of before the expiration of that time, if it had remained in the plaintiff's hands. It might have been sold under the incumbrances upon it, or under proceedings taken under the attachment law, which went into effect on the 1st day of July, in that year; but that was by no means certain, if the defendant Keyes, before the sale, truly represented, in what he said, the friendly nature of the plaintiff's creditors toward him. If it had been sold under either, the evidence tended very satisfactorily to show that he would have had six months' time to redeem after the sale, and that would have given him the chances of the market for all the year 1853, after the date of the contract of sale. The market was an advancing one for real estate. That clearly appears from the evidence, and the plaintiff would have been in the condition, in some way, to have enjoyed its advantages if his property had not been improperly disposed of by his agents. The law, in providing relief for a party, tortiously deprived of property, held for sale, by the act of another, designs to compensate him for the loss this wrong may appear to have occasioned him; and that can only be adequately done by allowing him to recover the amount of his actual loss, including the profits he has been deprived of by means of the wrong. *Griffin* v. *Colver*, 16 N. Y. 489. Limiting the recovery to the precise period of the commission of the wrong, would often result in depriving the owner of the redress he should justly receive for the loss of his property. The rule would often prove a source of profit to the wrong-doer. It would usually be so where property should be misappropriated

during the time of a falling market. To avoid that result, the owner should be allowed the fair value of the property wrongfully taken from him, to be ascertained according to its market price, within a reasonable period after the commission of the wrong; and where it consists of the number of parcels sold by the defendants in this case, amounting to so large a sum in value, a period of six months, the time allowed by the court in this case does not appear unreasonable or improper. The state of the market during that time would justify the jury in awarding him no more than what a proper and just rule would seem to require he should be allowed to have; and there is nothing in the recent decisions of the courts, depriving him of that measure of compensation, as long as the jury were satisfied that the defendants had been guilty of the misconduct upon which alone any recovery in the plaintiff's favor was allowed by the court to be had. *Suydam* v. *Jenkins*, 3 Sandf. 614; *Scott* v. *Rogers*, 31 N. Y. 676; *Matthews* v. *Coe*, 49 id. 57; *Baker* v. *Drake*, 53 id. 211, 219. In *Scott* v. *Rogers*, four months for the disposition of the property by the owner, was not considered unreasonable as the time within which its value could be awarded by the recovery; and in *Matthews* v. *Coe*, the value, at the time when it was designed by the owner the property should be sold, was considered to be reasonable in determining the amount of the recovery. If the defendants had not deprived the plaintiff of the opportunity, by means of their sale of his property, there is very good reason for believing that he would have enjoyed all the benefits of the advancing market for real estate during the whole of the time allowed by the court within which its value was to be ascertained by the jury, in case their verdict was found in the plaintiff's favor. The range given was reasonable, just and proper under the circumstances of the case and the state of the market.

No other exceptions have been urged in support of the defendants' motion for a new trial, and as those considered have been found to be without foundation, the motion must be denied, and the plaintiff must have judgment upon the verdict, with costs. The motion for a new trial at the special term should not have been heard and decided by the court, as long as the case was sent in the first instance, for a similar application, to the general term, and was required by law to be there heard and decided. The order of the special term should, therefore, be modified so as to direct a

dismissal of that application, and, as so modified, affirmed, with $10 costs.

It was suggested upon the argument, that the defendant Scott had departed this life since the verdict in the case was rendered; for that reason, the order and judgment should be entered of some date subsequent to the verdict, and preceding the death of this defendant.

DAVIS, P. J., concurred.

DONOHUE, J., dissented.

*Order and judgment accordingly.*