Sullivan,  }
Nov. 5, 1907. }

## FRYE, *Ex'r*, v. HUBBELL *& a.*

An action otherwise maintainable is not barred by section 6, chapter 191, Public Statutes, because it is not brought until more than two years after the original grant of administration.

The presumption that a mortgage debt has been paid or had no valid existence, which arises from twenty years' unexplained and undisturbed possession by the mortgagor, is repelled by any act recognizing the validity of the mortgage.

Whether the occupation of mortgaged premises by the mortgagor under the mortgagee is a sufficient possession to complete foreclosure, is a question of fact dependent upon the purposes and intentions of the parties.

The payment and acceptance of a sum less than the amount due in full satisfaction and discharge of a debt is a defence to an action for the collection of the balance.

WRIT OF ENTRY, to foreclose a mortgage. Plea, the general issue and a brief statement, as follows: That the action did not accrue within twenty years of the date of the writ; that the defendants had not disseized the plaintiff within twenty years; that the plaintiff was never seized of the premises; payment; accord and satisfaction; that the action was not brought within two years of the original grant of administration; that the plaintiff's mortgage was subject to a prior mortgage to the Newport Savings Bank, which had been foreclosed, and the title had come to the defendant Abbie A. Hubbell. Trial by jury. Under instruction from the court, a verdict was returned for the plaintiff. Transferred from the November term, 1905, of the superior court by *Chamberlin*, J.

The evidence tended to prove the following facts: December 16, 1879, the defendants, Abbie A. and William W. Hubbell, executed a mortgage of the demanded premises to John M. Wakefield, the plaintiff's testator, to secure their promissory note for $600, signed by Abbie A. as principal and William W. as surety. The premises were then incumbered by a mortgage to the Newport Savings Bank, to which the Wakefield mortgage was made subject. Otis S. Johnson purchased the bank mortgage for value, and on May 13, 1886, his administrator was put into possession of the premises by virtue of a writ of possession issued upon a judgment against these defendants in a suit brought by Johnson on the bank mortgage. The delivery of possession appeared from the sheriff's return upon the writ of possession. Wakefield was

not a party to the suit. November 18, 1890, Johnson's administrator, in consideration of the payment of $1,692.57, conveyed the premises by quitclaim deed to Ida E. Brigham, who quitclaimed them on October 6, 1903, to her sister, Abbie A. Hubbell. Abbie A. was never actually put out of possession of the premises, but continued to collect the rents and treat the property as her own, paying interest on the bank debt owned by the Johnson estate up to the time of the conveyance to her from her sister. She never had a lease of the premises, nor paid rent. Wakefield died February 3, 1900. The plaintiff was appointed executor February 12, 1900, and brought this suit on January 16, 1905.

The Wakefield note was further secured by a mortgage of real estate in Enfield, which was discharged on November 23, 1893, upon payment to Wakefield of $293.03, that sum being realized from a sale of the premises. The note bore the following indorsement: "$292.03. Nov. 28, 1893. Received of Abbie A. Hubbell $293.03 from sale of Endfield property as part of the within note." There was evidence that William W. Hubbell made two payments on the note, one of $20 and one of $25, that Abbie A. paid $300 about November 28, 1893, and that Wakefield agreed, at the time of the latter payment, to accept said payments, together with that indorsed on the note, in full satisfaction and payment of the debt.

At the close of all the evidence, a motion for a nonsuit as to William W. Hubbell was granted. A motion for a nonsuit and verdict in favor of Abbie A. Hubbell was denied, subject to exception. The latter motion was upon the grounds (1) that the action was not brought within two years after the original grant of administration to the plaintiff, (2) because the action was not brought within twenty years after the right of action accrued, and (3) because of the foreclosure of the bank mortgage. There were no exceptions to the charge to the jury. After being out eighteen hours, the jury were unable to agree as to how much had been paid on the note, or as to the alleged agreement that the sums paid were accepted in full payment of the note and satisfaction of the debt. Thereupon the plaintiff consented to admit the several payments claimed by the defendants. The court withdrew the instructions previously given, instructed the jury that an agreement on the part of Wakefield to accept the payments in full satisfaction and discharge of the note would be no defence to a suit for the balance, and directed them to return a verdict for the plaintiff for the amount due on the note after applying the payments claimed by the defendants. To this

instruction and direction of verdict the defendant Abbie A. excepted.

*Frank O. Chellis*, for the plaintiff.

*George R. Brown* and *Hosea W. Parker*, for the defendant.

PARSONS, C. J. The only questions of law transferred are those raised by the exceptions to the denial of the motion for a nonsuit and verdict in favor of Mary A. Hubbell, to the verdict directed for the plaintiff against her, and to the final instructions given the jury as to the effect of evidence that certain sums were paid and accepted in full satisfaction of the debt.

There was no error in the denial of the motion for a nonsuit and verdict. Section 6, chapter 191, Public Statutes, suspends in favor of the executor the running of the statute of limitations as to all rights of action existing in favor of the deceased at his death, if suit is brought within two years. It does not bar an action otherwise maintainable brought after two years from the date of administration. *Morse* v. *Whitcher*, 64 N. H. 591. As to the two other grounds upon which the motion for a nonsuit was placed,—that the action was not brought within twenty years after the right of action accrued, and the alleged foreclosure of the prior bank mortgage,—the most favorable view of the case for the defendant is that the evidence presented questions of fact upon which a jury might find for her. Although twenty years' unexplained and undisturbed possession by the mortgagor bars the right of the mortgagee to the land, upon the presumption that the mortgage debt has been paid or had no valid existence, this presumption is repelled by any act recognizing the validity of the mortgage. *Tripe* v. *Marcy*, 39 N. H. 439, 449, 450; *Green* v. *Cross*, 45 N. H. 574, 584; *Clark* v. *Clough*, 65 N. H. 43, 78; *Martin* v. *Bowker*, 19 Vt. 526, 527. Whatever the legal conclusion might be if the only evidence of payment was the indorsement of the sum received from the proceeds of other property mortgaged to secure the same debt, the case does not rest on this evidence. There was other evidence as to this payment, and the defendant claimed to have made other payments. Whether they were made, and whether either was so made as to constitute a recognition of the validity and existence of the mortgage, were questions upon which the evidence was not conclusive in favor of the mortgagor. As to the remaining ground, the evidence conclusively established the entry of the prior mortgagee and that possession was taken by him for the purpose of foreclosure. *Wendell* v. *Mugridge*, 19 N. H. 109; *Lewis* v. *Blair*, 1 N. H. 68.

Whether the foreclosure was completed by a year's possession, by
the occupation of Abbie A. Hubbell under the mortgagee, was a
question of fact dependent upon the purpose and intentions of the
parties. *Ross* v. *Leavitt*, 70 N. H. 602, 604; *Thompson* v. *Paris*,
63 N. H. 421, 423; *Hall* v. *Hall*, 46 N. H. 240, 243; *Howard* v.
*Handy*, 35 N. H. 315, 325; *Deming* v. *Comings*, 11 N. H. 474,
479; *Downer* v. *Clement*, 11 N. H. 40; *Gibson* v. *Bailey*, 9 N. H.
168, 172; *Gilman* v. *Hidden*, 5 N. H. 30; *Kittredge* v. *Bellows*, 4
N. H. 424. Without reference to the soundness of the plaintiff's
contention that foreclosing possession by the mortgagee could not
be found from the evidence, the admitted fact that the occupation
was by one of the mortgagors instead of by the mortgagee, and the
controversy as to the character of such occupation, prevents the
conclusion that as a matter of law the mortgagee retained posses-
sion for one year so that the foreclosure became complete.

No question is raised as to the right of Abbie A. Hubbell to
possession under the bank mortgage if it was not foreclosed. The
statement that the plaintiff's mortgage was subject to the bank
mortgage qualifies the covenants of warranty on the part of the
grantors and establishes that the grantee had notice that his secur-
ity covered only an equity of redemption. *Lawrence* v. *Towle*, 59
N. H. 28, 30. The original title of the two mortgagors is not
stated. No facts appear as to the transfer of the bank mortgage
interest in the property from Ida E. Brigham to the defendant
Abbie A. Hubbell, except that it was by quitclaim deed. The
determination whether this transaction effected a payment or dis-
charge of the bank mortgage, or an assignment of it to the defend-
ant Abbie, and whether she could insist upon payment by the
plaintiff before he would be entitled to possession by virtue of his
mortgage of the equity of redemption, would involve legal ques-
tions not raised or transferred, dependent upon facts not reported.
As to this point, it must be concluded that the rulings at the trial
term were satisfactory to the parties, or that no question was
made, if any could be, because, as was suggested in argument, the
property is sufficiently valuable to satisfy both mortgage debts if
legally chargeable therewith.

There were no exceptions to the instructions to the jury, as the
case was first submitted to them. It therefore must be concluded
that all questions of fact raised by the pleadings and evidence
were correctly submitted. After being out a long time, it
appeared that the jury were unable to agree as to the payments
that had been made, or whether they had been accepted in full
payment of the note and satisfaction of the debt. It is to be
inferred that the jury had agreed on all questions presented by
the evidence upon the issues involved in the trial, except the

extent to which the debt had been satisfied and discharged. Upon the fact and character of the disagreement of the jury becoming known, the plaintiff assented to the payments claimed by the defendant, and the jury were instructed, in computing the amount due on the note, to allow the payments which the defendant claimed. The instructions previously given were withdrawn, and the jury were instructed, in substance, that the alleged agreement to accept the payments in full satisfaction and payment of the note was immaterial upon the question of the amount due, and were directed to return a verdict for the plaintiff for the balance due after allowing the payments claimed. To this instruction and direction of the verdict the defendant excepted. In this action, the verdict for the plaintiff upon the general issue must have been that the defendant did disseize the plaintiff as alleged, and the assessment of damages was essential only to determine the amount for which conditional judgment should be rendered. The verdict directed and the instruction given, after the difficulty of the jury was disclosed, appear to relate only to the question whether anything was due. It is therefore inferred that the jury had found the technical verdict in favor of the plaintiff except as affected by the alleged agreement of satisfaction, or else that it had been previously ruled, without objection from the defendant, that the evidence as to the bar of the statute and the foreclosure presented nothing for the jury. It has therefore not seemed necessary to consider whether a payment of a certain sum in full satisfaction and discharge of a mortgage debt is an acknowledgement of an existing greater debt, sufficient to repel the presumption of full payment arising from twenty years' undisturbed possession by the mortgagor, without other payment or recognition of the existence of the debt. The material question raised by the case is the legal soundness of the ruling that the payment and acceptance of a sum less than the amount due in full satisfaction and discharge of the debt is no defence to the collection of the balance.

The rule given the jury has been followed by this court. *Page v. Brewster,* 54 N. H. 184, 189; *Mathewson* v. *Bank,* 45 N. H. 104, 106, 107; *Blanchard* v. *Noyes,* 3 N. H. 518. In the first case cited there is no consideration of the question, and the authorities relied on—*Fisher* v. *Willard,* 20 N. H. 421, and *Clark* v. *Dinsmore,* 5 N. H. 136—are not in point. In *Blanchard* v. *Noyes,* 3 N. H. 518, the suit was debt on a judgment for $9.91 debt and $4 costs. The defendant pleaded payment of $10 to the plaintiff in full satisfaction of the judgment. The plea was held bad, the court saying: "It is well settled, that a plea simply alleging the acceptance of a smaller sum of money in satisfaction of a larger sum is bad." But it was further held that the defend-

ant might have leave to amend and plead payment. It was said: "The agreement to accept the $10 in satisfaction may be left to the jury, as evidence that the rest has been paid," citing *Henderson* v. *Moore*, 5 Cranch 11. This conclusion was approved in *Lisbon* v. *Bath*, 21 N. H. 319, 332, by *Eastman*, J., where he says: "It is perfectly competent for a person to take a less sum than what is actually due, and discharge his claim if he thinks proper so to do. And upon a plea of payment, the acceptance of a less sum in satisfaction may be left to a jury as evidence that the rest has been paid." If the rule of these cases is sound, the verdict directed in this case was erroneous because there was evidence upon the plea of payment.

In *Mathewson* v. *Bank*, 45 N. H. 104, it was held that payment of a part of a debt after it is due is not a sufficient consideration for a promise to give time to the principal debtor, so as to discharge the surety, a conclusion which the court felt "reluctantly compelled by the weight of authority" to reach. In support of the conclusion it was said: "A parol agreement by a creditor to accept part payment of his debt in money in satisfaction of the whole debt will not be binding upon him for want of consideration, although he actually receive such part payment and give a receipt for the whole debt." Although impressed with the unreasonableness of the rule, the court then felt compelled by the weight of authority to adhere to it. In *Russ* v. *Hobbs*, 61 N. H. 93, a written agreement of extension in consideration of a note for the interest then due, signed by the maker of the note and a third party, was held invalid for want of consideration. The court say: "The case does not show the fact, and there is no legal presumption that the new note for the amount of interest due was given or received as anything but payment, or was more valuable as an investment than the same amount of cash, or that for any reason it was more effective as a consideration than payment of the same amount of money." The rule has also been recognized in other cases which have been considered to constitute exceptions because of evidence held to furnish a consideration, viz.: Payment by note of a third person for a less sum (*Colburn* v. *Gould*, 1 N. H. 279); payment by a third person, at the debtor's request, of a less sum in note or money (*Grant* v. *Porter*, 63 N. H. 229, 230); composition with creditors (*Bartlett* v. *Company*, 69 N. H. 316; *Grant* v. *Porter, supra*; *Browne* v. *Stackpole*, 9 N. H. 478); if the damages are unliquidated (*Hilliard* v. *Noyes*, 58 N. H. 312).

In *Fisher* v. *Willard*, 20 N. H. 421, 424, it is said that "nothing is better settled than that a promise, without some kind of consideration, to receive a less sum in payment of a greater is of no effect." The only authority cited in *Fisher* v. *Willard* is *Clark*

v. *Dinsmore*, 5 N. H. 136, which was a claim for unliquidated damages in which the accord would have been a bar if there had been satisfaction.    In *Watson* v. *Elliott*, 57 N. H. 511, it is said: "A plea of accord and satisfaction must aver something done and accepted in satisfaction, and the averment must be proved.    If the demand to be satisfied is a definite sum of money, and the sum to be paid in satisfaction also money, the satisfaction must equal the claim; but if the claim is for unliquidated damages, or the thing done or given is not money, the question of adequacy does not arise."    In *Curtis* v. *Egan*, 53 N. H. 511, 514, 515, the effect of an entry "N. P." (neither party) being under discussion, it was said that "the abandonment and discharge of the defendant's claim for costs was a good consideration for the abandonment and discharge of the plaintiff's claim for debt and costs."    The conclusions reached in these cases seem in accord with the law as elsewhere held, with perhaps the exception of the holding in *Russ* v. *Hobbs*, 61 N. H. 93, that the note of the debtor and another was no more effective as a consideration than the payment of the same amount of money,—a conclusion in principle in conflict with the statement in *Grant* v. *Porter*, 63 N. H. 229, 230, three years later, upon the authority of *Brooks* v. *White*, 2 Met. 283, that the note of a third person for less than the amount due, accepted in full satisfaction and discharge, extinguishes the debt, unless a distinction can properly be made between an agreement for delay and one to discharge a debt.    *Gibson* v. *Renne*, 19 Wend. 389; *Boyd* v. *Hitchcock*, 20 Johns. 76.

In the remaining cases, the invalidity of a parol agreement discharging an ascertained debt upon payment of less than is due is reluctantly recognized in view of the weight of authority, but any circumstances which could be considered as furnishing a technical legal consideration have been seized upon to establish the validity of the discharge.    It is to be noted that only in *Page* v. *Brewster*, 54 N. H. 184, has the rule been directly enforced, and that in that case the rule was applied without discussion of the question or the citation of authorities supporting it.    In *Blanchard* v. *Noyes*, 3 N. H. 518,—the remaining case where the rule was directly involved by the plea,—although upon the authorities the plea of accord and satisfaction was held bad, the evidence was considered sufficient to support a plea of payment, and, with the evident idea that the injustice of the court might be corrected by the jury, the responsibility was transferred to them.    In other jurisdictions the rule is almost universally regarded with disfavor, although followed, and the extension of the exceptions has been carried so far by the discovery of sufficient consideration in trivial and apparently immaterial circumstances that the rule itself might more

logically be abandoned, while in two states it has been directly attacked and overruled. *Clayton* v. *Clark*, 74 Miss. 499,—37 L. R. A. 771, 60 Am. St. Rep. 521; *Dreyfus* v. *Roberts*, 75 Ark. 354,—69 L. R. A. 823. In others it has been abrogated, in whole or in part, by legislative action. Wald's Poll. Cont. (3d ed.) 211, note; 1 Cyc. 322; 1 Am. & Eng. Enc. Law 414, 415. In this state of the law it has been thought to be the duty of the court to re-examine the foundations of the rule rather than to permit the case to be carried by the mere weight of authority here and elsewhere.

Discussion of the question generally starts with Lord *Coke*, A. D. 1602. In *Pinnel's Case*, 5 Co. 117,—1 E. R. C. 368, the plaintiff brought an action of debt on a bond for payment of 8*l.* 10*s.*, November 11, 1600. The defendant pleaded that before that day, on October 1, at the request of the plaintiff he paid 5*l.* 2*s.* 2*d.*, which sum the plaintiff accepted in full satisfaction of the debt. "The plaintiff had judgment for the insufficient pleading; for he did not plead that he had paid the 5*l.* 2*s.* 2*d.*, in full satisfaction (as by law he ought), but pleaded the payment of part generally, and that the plaintiff accepted it in full satisfaction." The only point decided in *Pinnel's Case* was a point of pleading, now obsolete; for it is certain that no court, English or American, would now dispose of *Pinnel's Case* as it was determined in 1602. If the point of pleading was considered of any moment, the defendant would have leave to amend, and judgment would go according to the right—not the form.

But in deciding the case, "it was resolved by the whole court that payment of a lesser sum on the day in satisfaction of a greater cannot be any satisfaction for the whole, because it appears to the judges, that by no possibility a lesser sum can be a satisfaction to the plaintiff for a greater sum; but that the gift of a horse, hawk, or robe, &c., in satisfaction, is good. For it shall be intended that a horse, hawk, or robe &c., might be more beneficial to the plaintiff than the money, in respect of some circumstance, or otherwise the plaintiff would not have accepted of it in satisfaction. But when the whole sum is due, by no intendment the acceptance of parcel can be a satisfaction to the plaintiff; but in the case at bar it was resolved that the payment and acceptance of parcel before the day in satisfaction of the whole would be good satisfaction in regard of circumstance of time; for peradventure parcel of it before the day would be more beneficial to him than the whole at the day, and the value of the satisfaction is not material. So if I am bound in 20*l.* to pay you 10*l.* at Westminister, and you request me to pay you 5*l.* at the day at York, and you will accept it in full satisfaction of the whole 10*l.*, it is a good satisfaction for

the whole; for the expenses to pay it at York is sufficient satisfaction." While no case has been discovered resting on the point decided in *Pinnel's Case*, the matters "resolved" by the court have had great influence upon the law, as determined by decided cases which are generally and until recently, in the absence of statutory correction, universally in conformity with the *dictum* of the resolutions and the further point " adjudged "—that a release by deed without consideration was a good bar.

Two things were resolved: (1) That if the creditor accepted in discharge of the debt anything which might be by any possibility of benefit to him, this was a good satisfaction; and (2) that payment of a lesser sum on the day in satisfaction could not by any possibility be beneficial to the creditor. The latter resolution was in no way involved in the case, and the conclusion was simply *dictum*. Lord *Blackburn*, in *Foakes* v. *Beer*, 9 App. Cas. 605, 616, 617. In the *dicta* of Lord *Coke*, nothing is said of a want of consideration for the creditor's agreement to accept the less sum in satisfaction of the debt; but in 1804, Lord *Ellenborough*, in *Fitch* v. *Sutton*, 5 East 230, relying upon the authority of Lord *Coke* in *Pinnel's Case*, introduced the idea of a want of consideration. "There must be," he says, "some consideration for the relinquishment of the residue; something collateral, to show a possibility of benefit to the party relinquishing his further claim, otherwise the agreement is *nudum pactum*." This statement of Lord *Ellenborough* has been followed by the courts, and is the foundation of the extended discussions which are to be found in the books. 12 Harv. Law Rev. 524. Much argument is found on the question whether in the particular case some consideration could be found for the agreement, or as Lord *Ellenborough* puts it, some "possibility of benefit" to the creditor. The cases are very numerous. 1 Cyc. 319–322; 1 Am. & Eng. Enc. Law 415, 428; notes in 100 Am. St. Rep. 428–447, 64 Am. Dec. 138, 20 L. R. A. 785, 1 E. R. C. 368–405, 1 Sm. L. C. 146; *Jaffray* v. *Davis*, 124 N. Y. 164, 167.

But the courts, while following the *dicta*, " have rarely failed, upon any recurrence of the question, to criticise and condemn its reasonableness, justice, fairness, or honesty." *Jaffray* v. *Davis*, *supra*. *Alderson*, B., in *Sibree* v. *Tripp*, 15 M. & W. 23, 38, says, after stating the rule: " The courts might very well have held the contrary, and have left the matter to the agreement of the parties "; while Lord *Selborne*, in *Foakes* v. *Beer*, 9 App. Cas. 605, 613, says: " It might be (and indeed I think it would be) an improvement in our law, if a release or acquittance of the whole debt, on payment of any sum which the creditor might be content to receive by way of accord and satisfaction (though less than the whole) were held to be generally binding, though not under seal." In the same case

the history of the rule is given by Lord *Blackburn*, who, while yielding to the opinion of his associates as to the weight of authority, says (*pp.* 617, 622) : "And, notwithstanding the very high authority of Lord *Coke*, I think it is not the fact that to accept prompt payment of part only of a liquidated demand can never be more beneficial than to insist on payment of the whole. And if it be not the fact, it cannot be apparent to the judges. . . . What principally weighs with me in thinking that Lord *Coke* made a mistake of fact is my conviction that all men of business, whether merchants or tradesmen, do every day recognize and act on the ground that prompt payment of a part of their demand may be more beneficial to them than it would be to insist on their rights and enforce payment of the whole. Even where the debtor is perfectly solvent, and sure to pay at last, this often is so." "To say that you may receive something which is not money,—a chattel, for instance, of inferior value,—but that you cannot receive money, is to my mind a very singular state of the law." *Grove*, J., in *Goddard* v. *O'Brien*, 9 Q. B. Div. 37, 39. In *Johnston* v. *Brannan*, 5 Johns. 268, 271, the principle under discussion is termed the "rather unreasonable rule of the old law"; while in *Kellogg* v. *Richards*, 14 Wend. 116, 119, it is said to be "technical and not very well supported by reason." Under the rule, "the creditor may violate with legal impunity his promise to his debtor, however freely and understandingly made. This rule . . . obviously may be urged in violation of good faith." *Brooks* v. *White*, 2 Met. 283, 285. "The principle of law . . . has been long established and is well settled; still very little reason can be given for it." *Mitchell* v. *Wheaton*, 46 Conn. 315,—33 Am. Rep. 24. The rule is "somewhat harsh, contrary to the apparent intentions of parties in making a compromise settlement, and not in harmony with the dictates of natural justice." *Shaw*, C. J., in *Langdon* v. *Langdon*, 4 Gray 186, 189.

But despite this criticism the rule has survived, in form at least. It is of course impossible to have examined all the cases; but so far as such examination has been carried, the number of cases in which the rule has been applied, and judgment rendered for the plaintiff, despite the agreement to discharge, is small in comparison with those in which the courts have been able to discover some circumstance, however trifling, which could be construed a technical legal consideration. The rule is not a statute, or even a rule of property. Its validity depends upon its consonance with reason. While the almost universal acceptance of it may commend it to the court with almost irresistible force, still it is open for examination as to whether it was originally sound and whether the weight of the authority upholding it is not diminished

or totally overthrown by the exceptions with which the rule cannot logically stand. Before reaching these questions, it is to be considered whether, if originally sound, the reason does not fail after the changes of three hundred years—a proposition for the affirmative of which there is authority.

"There was a time in the history of the law when, like everything else of that day, it was a system of metaphysics and logic, and when the case was decided without the slightest regard to its justice, solely on the technical accuracy of the pleaders on the several sides; defect of form in the plea was defect of right in him who used it. . . . Payment of debt and interest on a bond, the next day after it fell due, was no defence in a court of law; nay, it was no defence to prove payment without an acquittance before the day; nay, if you pleaded and proved a payment which was accepted in full of the debt, yet you failed unless your plea stated that you paid it in full, as well as that it was accepted in full, or perhaps because you pleaded it as a payment when you ought to have pleaded it as an accord and satisfaction. . . . It is not a century since it was solemnly decided, that if a creditor, finding his debtor in failing circumstances and being afraid of losing his debt, proposed to give him a discharge in full if he paid half the money, and the debtor borrowed the money and paid the one half on the day the bond fell due, and got an acquittance in terms as explicit as the English language could afford, yet if sued he must pay the rest of the debt; for it was impossible, say the court, payment of part could be a satisfaction of the whole; but if part was paid before the day, it was good satisfaction of the whole. . . . It avails little, then, to go back to the last century, or further, to cite cases in which a matter was of validity or effect according as it was couched in this or that form. Universally the law is, or ought to be, that the meaning or intention of the parties is, if it can be distinctly known, to have effect, unless the intention contravenes some well established principle of law." *Milliken v. Brown*, 1 Rawle 391, 397, 398. "The rule that payment of a smaller sum is not a good accord and satisfaction for a larger one . . . was a deduction of strict scholastic logic, in the days when money was regarded as having a fixed and unchangeable value. Hence, a part payment of money due could never logically be treated, even by agreement, as equivalent to a payment of the whole. In the business methods of the present, it has come to be recognized that money, like other commodities, has fluctuations of value, not only in the general market, but also and more especially to the individual. To a merchant with a note coming due, $5,000 before three o'clock today, which will save his commercial credit, may well be worth more than $20,000 tomorrow, after his note has

gone to protest. . . . The rule was always regarded as more logical than just, and as coming very close to a contradiction of the general rule that the law will not measure the amount or value of the consideration if parties have agreed upon it." *Ebert* v. *Jones,* 206 Pa. St. 395, 398. See Lord *Blackburn* in *Foakes* v. *Beer, supra.* "The absurdity and unreasonableness of the rule seem to be generally conceded, but there also seems to remain a wavering, shadowy belief in the fact, falsely so called, that the agreement to accept, and the actual acceptance of, a lesser sum in the full satisfaction of a larger sum is without any consideration to support it; that is, that the new agreement confers no benefit upon the creditor. However it may have seemed three hundred years ago in England, when trade and commerce had not yet burst their swaddling bands, at this day and in this country, where almost every man is in some way or other engaged in trade or commerce, it is as ridiculous as it is untrue to say that the payment of a lesser part of an originally greater debt, cash in hand, without vexation, cost, or delay, or the hazards of litigation in an effort to collect all, is not often —nay, generally—greatly to the benefit of the creditor." *Clayton* v. *Clark,* 74 Miss. 499, 509. An abandonment of the rule may well be placed on the broadened spirit of the law and upon the fact that the premise upon which it was founded, if true in the seventeenth, is not true in the twentieth century.

In the application of the conclusion of Lord *Ellenborough,* that some possibility of benefit to the creditor would furnish a consideration for the agreement to discharge the balance, the courts have practically in many cases overruled the rule itself, while adhering to it in form. They proceed upon the assumption that the observation of Lord *Coke,* that the acceptance of any chattel in discharge of the debt was a satisfaction because the court could not know the value of the chattel, implied that anything except money, though notoriously of less value than the debt, would furnish a consideration for the agreement. Some of the grounds upon which a parol agreement for discharge has been held valid are, as said in a recent case, "interesting and amusing." *Dreyfus* v. *Roberts, supra.* Reference to them would only tend to display in a stronger light the disfavor with which the rule has been regarded, which sufficiently appears from the quotations already given. Many cases are discussed in *Jaffray* v. *Davis,* 124 N. Y. 164. Others are to be found in the general works cited *supra.*

But the cases which hold that the furnishing of security by mortgage, pledge, or notes of a third person for a part of the debt is a sufficient consideration for a discharge of the residue are without foundation, unless the payment of money is such a considera-

tion. These cases are numerous. *Brooks* v. *White*, 2 Met. 283; *Guild* v. *Butler*, 127 Mass. 390; *Boyd* v. *Hitchcock*, 20 Johns. 76; *Kellogg* v. *Richards*, 14 Wend. 116, 119; *Keeler* v. *Salisbury*, 33 N. Y. 648; *Jaffray* v. *Davis*, 124 N. Y. 164; *Sibree* v. *Tripp*, 15 M. & W. 23; *Bidder* v. *Bridges*, 37 Ch. Div. 406. The only purpose of security of this sort is to produce money for payment on the debt, and the only benefit to the creditor is that such may be the result. If it is not beneficial to a creditor to receive one half his debt in cash, it is not beneficial to have such payment secured. A promise cannot be beneficial unless the thing promised is. In *Jaffray* v. *Davis, supra*, notes for one half the debt, secured by a chattel mortgage, were given in discharge of the claim. The discharge was held good, although it appears to be conceded that the payment of one half in money at the time the notes were given, upon the same agreement, would not constitute a valid discharge. Under the doctrine of this case, a one day note for one half the debt, secured by the pledge of an equal amount in gold coin, would constitute a valid discharge, while the direct payment of the same amount in gold coin could not. It is undoubtedly true that the creditor may be better off with security for one half the debt than with the whole claim unsecured. It may be true, as held in *Goddard* v. *O'Brien*, 9 Q. B. Div. 37, that a check, from its negotiable character, may be more beneficial to the creditor than a book account for a larger sum; but no security can be more valuable or more negotiable than cash in hand. Scholastic or any other variety of logic which establishes the sign to be more valuable than the thing signified, the shadow superior to the substance, the possession of an order for money more beneficial than the cash that can be obtained upon it, is the logic of unreason. When it is held that something whose only purpose and value lies in its capacity to secure the payment of money is a sufficient consideration for an oral discharge, the rule of *Pinnel's Case*, that the money itself is not such a discharge, is logically overturned. The two cannot stand together. To attempt to reconcile them by the suggestion of value in the paper on which the mortgage is written would be as reasonable as to say that the signature of a third party to a note " may be worth something as an autograph." *Curlewis* v. *Clark*, 3 Exch. 375, 380. It is generally beneficial to a creditor to transform his claim into money. Whether under the circumstances it is more beneficial for him to take part in money, or to retain the claim for the whole, is for him to decide; and no sufficient reason exists in logic or morals why he should be relieved from an agreement understandingly made.

Difficulty has been found in technicalities of the plea of accord and satisfaction. *Watson* v. *Elliott*, 57 N. H. 511, 513. But diffi-

culties of pleading are not now insuperable. If the parties have settled and agreed upon a discharge, or the application of something received—money, or anything else—in discharge, it is not material whether the transaction "came under the technical appellation of payment, accord and satisfaction, or release, or under no particular head usually found in the books. . . . And there seems to be no reason why such a discharge or application should not be shown under the general issue, as well as payment, or accord and satisfaction, if it would not come under either of those heads." *Curtis* v. *Egan*, 53 N. H. 511. The difficulty, aside from the technicalities of an ancient plea, arises from the familiar common-law principle that a promise without consideration cannot be enforced. The entire foundation of the application of this principle to the question under consideration is the assumption that Lord *Coke* thought, three hundred years ago, that the payment of part of a debt was no consideration for a promise. But Professor Ames has not only demonstrated (12 Harv. Law Rev. 521–523) that this assumption is not warranted by anything said in *Pinnel's Case* or the statement in the Commentary on Littleton (212 b) often cited to the same point, but cites the explicit language of *Coke* himself, in *Bagge* v. *Slade*, 3 Bulst. 162, to the contrary. The foundation of the remarks in *Pinnel's Case* he suggests to be the statement of *Brian*, C. J., that "payment of 10 pounds cannot be payment of 20 pounds." Y. B. 10 Hen. VII, *fol.* 4, *p.* 4. After stating the language of *Pinnel's Case* quoted above, the article continues: "There is no allusion in any of these remarks of the judges to the consideration for an assumpsit. The word 'consideration,' in its modern sense, was unknown to *Brian*, and the action of assumpsit was in his day in the embryonic stage. To his mind, whether 10 pounds could be a satisfaction of 20 pounds was a question of simple arithmetic which admitted of only one answer. Ten cannot be twenty, the part cannot be the whole. *Coke* was presumably familiar with *Brian's* statement. At all events, he reasoned in precisely the same axiomatic way: 'It appears to the judges that by no possibility a lesser sum can be a satisfaction for a greater.' It is sufficiently obvious from the similarity of the language of *Coke* and *Brian*, that it never occurred to the former that the resolution in *Pinnel's Case* was based upon any doctrine of consideration. But, fortunately, *Coke's* opinion is not a mere matter of inference. We have his own explicit statement, discriminating in the sharpest way between the operation of part payment as a satisfaction and as a consideration. In *Bagge* v. *Slade* [3 Bulst. 162] he said: 'If a man be bound to another by a bill in 1,000 pounds and he pays unto him 500 pounds in discharge of this bill, the which he

accepts of accordingly, and doth upon this assume and promise to deliver up unto him his said bill of 1,000 pounds, this 500 pounds is no satisfaction of the 1,000 pounds, but yet this is good and sufficient to make a good promise and upon a good consideration, because he has paid money 500 pounds, and he hath no remedy for this again.' In 1639, the obligor recovered judgment upon a promise like that in the case put by *Coke*, the court saying: 'For though legally, after the obligation is forfeited, 30 pounds can be no satisfaction for 60 pounds, yet to have the money in his hands without suit is a good consideration to maintain this action upon the promise.' [*Rawlins* v. *Lockey*, 1 Vin. Abr. 308, *pl.* 24]." Other cases are cited to the same effect. 12 Harv. Law Rev. 523.

As has been seen, the absurdity of the results of the rule relied upon in this case has been commented upon in case after case; but persistence in error under the shadow of a great name still calls that right which is recognized to be wrong. Can the faulty structure stand, now that the foundation stone has been removed? The contention is that there is no consideration for the promised release or discharge, if less than the full amount of money is paid. In *Kidder* v. *Blake*, 45 N. H. 530, 532, Judge *Bartlett* quotes with approval this definition: " Consideration means something which is of some value in the eye of the law, moving from the plaintiff. It may be some benefit to the defendant [promisor], or some detriment to the plaintiff [promisee]." Stated with greater elaboration, " a valuable consideration, in the sense of the law, may consist either in some right, interest, profit, or benefit accruing to the one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." *Currie* v. *Misa*, L. R. 10 Exch. 153, 162; *Rector etc.* v. *Teed*, 120 N. Y. 583, 586; Wald's Poll. Cont. 167. Professor Langdell says " detriment to the promisee is a universal test of the sufficiency of consideration," and regards benefit to the promisor as " irrelevant to the question whether a given thing can be made the consideration of a promise." Lang. Cont., *s.* 64. Professor Ames, in the article to which reference has been made, approves this simplified definition, but raises the question, what will be understood by detriment? He reaches the conclusion that the term should include every act or forbearance; while the opposite conclusion is that certain acts or forbearances as matter of law cannot constitute a detriment—that a person does not in legal contemplation incur any detriment by doing a thing which he was previously bound to do. Lang. Cont., *s.* 84. In the attempt to scientifically apply the rules of abstract logic to all the cases involving the question of consideration since the inception of the action of assumpsit, it is inevitable that numerous

cases will be found unexplainable upon any theory deducible from such rules.

Upon the theory that the detriment to the promisee which will furnish a consideration for a promise is any act or forbearance, *Foakes* v. *Beer* and the line of cases following its doctrine are exceptions contrary to principle; while whatever rule is adopted as to acts or forbearances that as matter of law cannot constitute a detriment, numerous cases are found which must be recognized as exceptions. It is not necessary to consider further these abstract discussions of the subject. It must be and is conceded that the common definition of " consideration " found in the reports is, as above stated, in substance " a detriment incurred by the promisee or a benefit received by the promisor in exchange for the promise." If any act or forbearance by the promisee is a detriment which will sustain a promise, the sole question is of sustaining an exception in principle and following authority which " originated in misconception, is repugnant alike to judges and men of business, is not applied consistently to all the cases fairly within its scope, has been a source of highly artificial and technical distinctions, has been changed by statute in India and in ten of our states, and is likely to be generally superseded by similar legislation." 12 Harv. Law Rev. 531. Under the other definition of consideration, the doctrine can be upheld only upon the ground that as matter of law payment of a part of a debt before it is due cannot be beneficial to the creditor or a detriment to the debtor. Upon either view, we are met merely by an assumption of the judges which is unfounded in fact. Upon the question whether such payment is or may be beneficial to a creditor, sufficient has already been said. There is nothing new or modern in the proposition that it may be. In *Reynolds* v. *Pinhowe* (1595), Cro. Eliz. 429, the court said of a payment to the creditor, " it is a benefit to him to have it without suit or charge." " Payment without suit or trouble of that which is due is a good consideration." *Johnson* v. *Astell* (1667), 1 Lev. 198. These and other like expressions, cited in 12 Harv. Law Rev. 523, show that the opinions of the modern judges before quoted, that payment before it can be compelled may be beneficial to the creditor, are not new discoveries.

Nor if detriment to the promisee is to be taken as the sole definition of consideration, is the conclusion that the present parting with money is no detriment defensible, judged by the fact and the practice of business men. When the parties have made a contract and agreed on the consideration,—the immediate payment of a sum of money,—it is the refinement of logic to say that such payment is no detriment, or to say, as does *Alderson*, B., in *Sibree* v. *Tripp*, 15 M. & W. 23, 37, " it is not one bargain but two ; name-

ly, payment of part, and an agreement without consideration to give up the residue." Such a statement is generally untrue. If A pays B $50 on a $100 debt, and then requests B to release him from the residue, there are two contracts if B agrees, and no consideration for the second; but such is not the transaction in fact, when A pays today $50 in consideration of B's agreement to discharge the whole debt. But, it is said, A is legally bound to pay B the $50; and as A only does what he is legally bound to do, there is no consideration. But the confusion arises from a failure to distinguish between legal and moral obligations. One may be morally bound to do precisely in terms as he agrees; but he is legally bound to do, as a practical proposition, whatever the theory may be, only what he can be compelled by law to do. The common law does not compel men to do as they agree. It gives damages for the failure to perform legal or contractual duties, but except in a few instances only can the specific performance of the contract be enforced. If A owes B a promissory note, no form of action is known by which B can compel A to pay it when due. If A does not pay as promised, in an action of assumpsit B can recover damages because of the breach of A's promise. Since the abolition of imprisonment for debt, the law does not take any steps to compel A to pay the damages. A's property, if he has any subject to execution, the law will seize and apply on B's damages. So that the most that A, who owes B a note, can be legally compelled to do is to suffer his property to be applied to pay B's damages. As to permit this is all A can be compelled to do, it is all that he is legally bound to do. The law does not prohibit his breach of his contract, but leaves him free to break it if he chooses, giving the other party the remedy of damages. *Chellis* v. *Grimes,* 72 N. H. 104, 106; *Wiggin* v. *Manchester,* 72 N. H. 576, 581; *Cox* v. *Jones,* 73 N. H. 504, 505. The damages the law awards for the non-payment of money is interest, and for the expense of obtaining judgment and execution, costs. If costs always equal the expense of litigation, if interest is always full recompense for delayed payment, and if an execution is always equivalent to money in hand, then a present part payment of a debt in cash is in fact never beneficial to the creditor or detrimental to the debtor, and can never be a consideration for a discharge of the balance. Whatever the conclusions of scholastic logic, as men having some acquaintance with affairs judges are bound to know that none of these propositions are always, if ever, true; and as they are not always all true, it cannot be matter of law that in a particular case a part payment was not such a benefit to the creditor or detriment to the debtor as to furnish a consideration for the creditor's agreement of discharge.

*Harriman* v. *Harriman*, 12 Gray 341, decided in 1859, was a suit on a judgment for $140.03 recovered in 1839. The defendant was then poor and unable to pay, and the plaintiff told him if he would raise and pay $20 he would receive the same in full satisfaction of the judgment. The defendant borrowed and collected $20 and paid it to the plaintiff, who accepted it in full settlement and satisfaction of the judgment, and gave the defendant a receipt in full of all demands. If the defendant was poor and unable to pay, it is to be inferred nothing could be collected on the judgment. As a business proposition, the question for the plaintiff would seem to have been whether it was more beneficial for him to accept what the defendant could then raise and pay, in discharge of the judgment, or to wait for an increase in the defendant's financial resources. There seems no reason why the plaintiff should not have been permitted to decide this question, or why the receipt of money which the defendant could not then be compelled to pay, and which the plaintiff could not obtain without the defendant's consent, should not constitute a sufficient consideration for the agreement under which the defendant was induced to part with his money. But it was held to be well settled that the discharge was invalid for want of consideration. But it is now held elsewhere that acceptance of part payment from an insolvent or embarrassed debtor in full satisfaction of the claim is founded on a sufficient consideration (*Engbretson* v. *Seiberling*, 122 Ia. 522, —101 Am. St. Rep. 279, 64 L. R. A. 75; *Melroy* v. *Kemmerer*, (Pa.) 67 Atl. Rep. 699), and that the abandonment of the right to go into insolvency or to take advantage of the bankrupt law furnishes a sufficient consideration for such a contract. Notes in 100 Am. St. Rep. 441, 442. The reason is clear. In such cases the creditor receives money he would not otherwise receive, and the debtor pays money for the discharge which he could not be compelled to pay. It is difficult to see why money so paid and received is not a benefit, despite the observations of Lord *Selborne* to the contrary in *Foakes* v. *Beer*, 9 App. Cas. 605, 613, 614. It is to be noted that the extension of the exemption from execution in modern times, as well as the abolition of imprisonment for debt, creates a situation in which the debtor, by sacrificing a right which the law gives him, may pay more or less upon a debt when he can legally be compelled to pay nothing.

The law does not measure the adequacy of the consideration upon which the parties have agreed. Wald's Poll. Cont. 193; Lang. Cont., s. 55. If a payment which the debtor cannot be compelled to make because of lack of property furnishes a consideration, present payment which he cannot be compelled to make because of lack of judicial machinery to effect such result must be

equally efficacious.| In the notes to *Cumber* v. *Wane* (1 Stra. 426), 1 Sm. L. C. (7th Am. ed.) 595, 610, it is doubted " whether the maxim that a smaller sum cannot be a satisfaction of a larger debt could apply to anything but a bond; . . . technically, it would be very difficult to make it apply to simple contracts. But as a principle of evidence, this rule, which requires for the substantiation of such agreements either a surrender of the instrument or a legal release, is a just, wise, and convenient rule, so great is the danger of fraud and mistake." This might have been a sound reason for a rule of evidence applying in all cases of discharge claimed by anything but full performance. But a payment of less before the day, or in another place at the day, or by a chattel, is not a discharge unless so agreed; and the necessity of the rule of evidence is as strong in the one case as in the other. No such rule has been applied, nor does it appear to have been attempted to support the maxim on this ground in the adjudged cases. The whole matter resolves itself into one of statement. If A holds B's note for $100, there is no reason in law or morals why he may not sell it to C for $50, or to B. An agreement by A to sell to B B's note for any sum less than there is due upon it is open to no objection arising from the intricacies of the plea of accord and satisfaction, or of any theory of consideration. Lang. Cont., *s.* 88.

The facts in the present case are not fully reported, but enough appears to justify the suspicion that the case may be within some of the exceptions. It is at least fairly inferable that the defendant was insolvent and had no other property except that covered by the plaintiff's mortgage, upon which another mortgage had precedence. Wakefield could recover nothing out of the property without paying the first mortgage. The defendant was under no obligation to sell or assent to a sale of the Enfield property; and if her consent to such sale was part of the agreement, there was a sufficient consideration under all the cases. Wakefield could have sold his second mortgage to the defendant for such sum as he saw fit; and the fact that the sum would not have equaled the amount due on the mortgage would not have invalidated the contract. Wakefield lived some six years after these transactions. There is no suggestion that he had any purpose except to be bound by the contract. His executor brings the suit; and the contention is, that because the parties regarded the transaction as payment or discharge instead of a sale, or because Wakefield neglected to deliver the note to the defendant as it has been suggested in argument he agreed to do (*Draper* v. *Hitt,* 43 Vt. 439), the law requires the plain purpose of the parties to be defeated, not because of any immorality in the transaction or lack of power in

the parties to make the agreement, but because the words they used to describe what they did imply that it was impossible for them to do what they in fact did.

No better guide for the determination of the rights of the parties in a contract can be discovered than their purpose and intention in making it. That having been ascertained, a sufficient reason for defeating such purpose is not found in the misinterpretation and misunderstanding of the language of a great jurist of the seventeenth century, however long continued. The rule that the payment of a less sum can never sustain an agreement to discharge a greater, because without consideration, however well supported by the authorities, is contrary to the fact at the present time, whatever the fact was when the rule originated, is based upon misconception, is not founded in reason, and cannot be followed without abandoning the greater principle that reason is the life of the law. In the words of the court in *Clayton* v. *Clark*, 74 Miss. 499, 510: "A rule of law which declares that under no circumstances, however favorable and beneficial to the creditor, or however hard and full of sacrifice to the debtor, can the payment of a less sum of money at the time and place stipulated in the original obligation, or afterward, for a greater sum, though accepted by the creditor in full satisfaction of the whole debt, ever amount in law to satisfaction of the original debt, is absurd, irrational, unsupported by reason, and not founded in authority, as has been declared by courts of the highest respectability and of last resort, even when yielding reluctant assent to it. We decline to adopt or to follow it."

While there was authority for the instruction finally given the jury, the discussion establishes that the instruction given and the direction of a verdict were erroneous. The verdict is set aside and a new trial granted.

*Exceptions sustained.*

CHASE, J., dissented : the others concurred.