Merrimack,  }
Jan. 4, 1921. }

### SHADRACH M. CATE, & a. v. JOSEPH G. CATE, & a.

The retention of a foreclosing possession is a question of fact; such possession once taken continues until there is an entry in opposition thereto, and the required continued possession may be found solely upon proof of the entry under process.

An admission that the adverse party, a foreclosing mortgagee, owns the property is an admission that he has done such acts as were necessary to maintain possession and is sufficient to support a finding that foreclosure was completed.

A finding against a claimed estoppel by conduct in representing a grantor to have

title is supported by evidence that the grantee repeatedly declared that he had
no interest in the property.

A grantee in a deed is not estopped to assert a prior mortgage against his co-
grantee where the deed is made subject to existing mortgages.

BILL IN EQUITY. Trial by the court. The plaintiffs seek to
establish their title to one undivided third part of certain real estate
in the town of Loudon. The parties are all grandchildren of one
Hiram Cate, who at one time had title to the premises. May 8, 1872,
Hiram mortgaged the premises to one Smith to secure the payment
of $1,200. Default having been made, Smith commenced fore-
closure proceedings, and upon March 13, 1882, received possession
of said premises under a writ of possession. March 21, 1882, Smith
conveyed all his title to Joseph G. Cate and Charles H. Cate, Jr.,
the defendants in this action, and they now claim title by virtue of
this foreclosure and deed from Smith. In 1882 there were three
generations living upon the place: Hiram and his wife, Charles, son
of Hiram, and his wife, and the younger children of Charles. In pur-
chasing the Smith mortgage, Charles, Jr., and Joseph were actuated
principally by a desire to save the Cate homestead and secure a home
for the Cate family.

Sometime subsequent to May 8, 1872, Hiram executed a second
mortgage upon the premises to one Fletcher, and upon March 15,
1882, Fletcher assigned this mortgage to one Anthony Cate, a son of
Hiram and uncle of the parties to this proceeding. Upon March 14,
1883, one Tallant filed a bill in equity against Charles, Jr., and
Joseph, alleging that he was the holder of the Fletcher mortgage, and
tender of the amount due under the Smith mortgage, and praying
that he be subrogated to the rights thereunder. The relief sought
by this bill in equity was never granted and it was finally marked
"Neither Party."

During the pendency of the Tallant case, Joseph and Charles, Jr.,
continued in possession of the premises under the Smith writ of pos-
session and the court ruled that the Tallant bill in equity did not have
the effect of staying or suspending the foreclosure.

Trial of the Tallant suit was commenced upon June 23, 1883, but
before it was finished the members of the Cate family arrived at a
family settlement, which led to the entry of the final marking
"Neither Party." By the terms of this settlement the Fletcher
mortgage was paid and discharged of record, but the evidence does
not indicate who furnished the money for this purpose.

Charles, father of the defendants, and Joseph and Charles, Jr., the

defendants, undertook to support Hiram during the remainder of his life and for the purpose of carrying out this agreement two deeds were executed: 1. Hiram gave to Charles, Joseph and Charles, Jr., a warranty deed of the premises in controversy; 2. Charles, Charles, Jr., and Joseph executed to Hiram a mortgage of the premises conditioned upon the grantors providing suitable maintenance for the support of Hiram during his lifetime and the annual payment to him of $30.

The deed from Hiram contained a clause stating that it was "subject to any mortgages made by the said Hiram Cate which in law may exist against said premises and subject to the mortgage of Nancy Batchelder made by said Charles H. Cate, Jr., and Joseph G. Cate."

It was found that at the time when Hiram executed his warranty deed to Charles and the defendants, Hiram had no right, title or interest in the premises, and that said deed vested no title in Charles, under whom the plaintiffs claim. Charles, Sr., continued to live upon the premises during his lifetime and with the help of the defendants and the other members of the family continued to support his father Hiram, so long as he lived. Charles in his lifetime repeatedly admitted that he had no interest in the real estate; and Sarah, his wife, after his decease, made like admissions. Neither of them understood that Joseph and Charles, Jr., had ever waived their right, under the Smith mortgage and foreclosure.

Other facts are stated in the opinion.

It was ordered that the bill be dismissed.

To the foregoing findings the plaintiffs excepted as follows:

1. To the ruling that the Tallant bill in equity did not have the effect of staying or suspending the foreclosure of the Smith mortgage.

2. To the finding that at the time when Hiram Cate executed his warranty deed to Charles H. Cate and the defendants, he, the said Hiram Cate, had no right, title or interest in the premises, and that said deed, therefore, vested no title in Charles H. Cate under whom the plaintiffs claim.

3. To the finding that the deed and mortgage of June 23, 1883, and the conduct of the parties thereto in connection therewith did not estop the defendants from claiming title to the whole premises, and from denying that Charles H. Cate acquired a good title as against them to one undivided third part of the premises.

4. To the finding that the plaintiffs have failed to establish their title to any part of the premises in question, and that the title of the defendant under the Smith foreclosure is complete.

Transferred from the October term, 1919, of the superior court by *Branch*, J.

*Nathaniel E. Martin* and *Harry J. Brown* (*Mr. Brown* orally), for the plaintiffs.

*John M. Stark* and *Robert W. Upton* (*Mr. Upton* orally), for the defendants.

PEASLEE, J.   The claim that the Tallant bill in equity had the effect of staying the foreclosure of the Smith mortgage is not well founded.   The prayer of the bill was that the plaintiff be subrogated to the rights of Smith as foreclosing mortgagee.   But whatever its object, or whatever effect it might have had, if pursued to a final decree, it comes to nothing for the suit was abandoned.   No authority has been cited or found to sustain the proposition that such a proceeding has any effect upon the completion or validity of the foreclosure.

The exceptions to the finding that Hiram had no title in 1883, and to the conclusion that the foreclosure of the Smith mortgage was complete, present the same question.   The position taken by the plaintiffs is that possession for a year after the sheriff gave seizin and possession to Smith was not shown.

Retention of foreclosing possession is a question of fact.   *Frye* v. *Hubbell*, 74 N. H. 358, 361, and cases cited.   Possession once taken continues until there is an entry in opposition thereto.   *Largey* v. *Taylor*, 75 N. H. 211, 213; *Boynton* v. *Hodgdon*, 59 N. H. 247; *Wallace* v. *Goodall*, 18 N. H. 439, 449.   While the possession must be something more than the mortgagee's original technical seizin, even when reinforced by a momentary entry under process (*Ray* v. *Scripture*, 67 N. H. 260, 262), it does not follow that the required continued possession may not be found as a fact upon proof of the entry under process, when nothing more is shown.   In such a state of the evidence the lawful possession shown to have once existed may be found to continue until the contrary appears.   Wig. Ev., s. 382. To overcome the efficacy of such entry and taking possession as evidence of a subsequent continuance of such possession, there must be evidence of an entry in opposition thereto.   *Largey* v. *Taylor, supra.*

The remark in *Ray* v. *Scripture, supra*, that the continuous act of possession for a year, not being matter of record like the entry, "must be proved by other evidence," was not necessary to the decision.

The contrary holding in *Boynton* v. *Hodgdon, supra*, is not referred to. There was no question in *Ray* v. *Scripture, supra*, but that the mortgagor was in fact in possession, and that the mortgagee was not, during the year. The question presented was not whether the record of entry was some evidence of subsequent possession, warranting a finding to that effect in the absence of contradicting proof, but whether the record was conclusive to that effect as against proof of facts outside the record showing that possession did not continue.

It is suggested in that case that *Hobson* v. *Roles*, 20 N. H. 41, and *Worster* v. *Company*, 41 N. H. 16, bear upon this question. Neither of those cases considers the specific question here involved, and neither makes any reference to *Wallace* v. *Goodall*, 18 N. H. 439, where it is said that "possession that had been acquired by the entry continued . . . until there was an ouster by some hostile entry." *Ib.* 449.

There is nothing in the opinion in *Bartlett* v. *Sanborn*, 64 N. H. 70, inconsistent with the view expressed in *Largey* v. *Taylor, supra*, or with the decision in *Boynton* v. *Hodgdon, supra*. The dictum that if the foreclosure had been by entry under process "the subsequent foreclosing possession need not have been peaceable, but must have been something more than a continuance of the legal seizin that had been in the mortgagee ten years, and something more than such continued seizin reinforced by a momentary entry," does not state that every entry under process is presumed to be merely momentary, or that reasonable inferences of fact may not be drawn from proof of such entry. In this case, as in *Ray* v. *Scripture, supra*, the facts are stated to be that after the mortgagee's entry the owner of the equity of redemption "had exclusive possession, not subordinate, in fact, to any right of any other person." Neither case involved the question now presented, and save for the before quoted remark in *Ray* v. *Scripture, supra*, there is nothing in either opinion to throw any doubt upon the rule recognized in *Wallace* v. *Goodall, supra*, applied in *Boynton* v. *Hodgdon, supra*, and reaffirmed in *Largey* v. *Taylor, supra*. "The formal entry being made, the law presumes that the possession continues unless an interruption be proved." 2 Jones Mortgages, s. 1258.

There is here no direct evidence of entry or possession hostile to the continued possession of the defendants. The evidence that their father, mother, grandfather and brothers and sisters continued to live upon the place as the family home is not inconsistent with the defendants' continued legal possession of the premises. The subse-

quent conduct of the parties tends to confirm the theory that they all understood that the defendants had such possession. The general object, to maintain a family home, was carried out, and Hiram and Charles, Sr., spent the remainder of their lives there. But shortly after Charles died, his widow sold off the personal property and removed from the place. Thereafter the defendants had unquestioned possession for many years and until this controversy arose. They have also paid the taxes ever since they went in under the Smith deed.

Moreover it was in evidence that the plaintiffs' alleged ancestors in title repeatedly admitted that they had no interest in the property, and that the defendants owned it. This was, of course, an admission that the defendants had done such acts as were necessary to maintain the possession upon which their title depended; and is in itself sufficient to support a finding that the foreclosure had been completed. As far as the foreclosure was a pure matter of fact, and one not capable of proof by any record, it could be shown by the admissions of the party adversely interested.

In addition to these facts and admissions there was also the testimony of Charles, Jr., that he and his brother went into possession under the Smith deed. Having proved themselves in possession, it was for the plaintiffs to show acts inconsistent with such possession or there was no ouster. If it could have been found that there was an ouster, the evidence certainly warranted the finding that one had not been shown.

It is also claimed that the deed of Hiram to the plaintiffs' ancestor and the defendants, and those grantees' mortgage back to secure Hiram's support, estop the defendants from setting up their superior title against their co-grantee in Hiram's deed. So far as the effect of accepting the deed from Hiram is concerned, it is sufficient to point out that the deed is expressly made subject to any mortgages given by Hiram. The claimed estoppel by conduct leading their co-grantee to furnish support to Hiram, relying upon the defendants' representation that Hiram's deed conveyed some title, is negatived by the declarations of Charles, Sr., that he had no interest in the property.

Most of the matters urged by the plaintiffs in argument are merely debatable questions of fact, upon which the findings are adverse to the plaintiffs' contentions.

*Exceptions overruled.*

All concurred.