GEORGE BLISS et al., Appellants, *v.* MOSES S. SHWARTS, Respondent.

Defendant, having failed in business, offered to compromise with his creditors. A number of them signed a composition agreement, agreeing to take in full of their claims twenty-five cents on a dollar, one-half cash and one-half in defendant's notes. Plaintiffs, who held notes of defendant, given for goods sold, when asked to join in the compromise, refused to accept the proposition then, but referred the matter to their agent, who agreed to settle at the terms proposed with an addition of $250 to the cash payment and fifty dollars to the note. This was accepted, and for the cash payment defendant's agent gave his own draft, which was received in lieu of the money. The notes were sur-

rendered, and plaintiffs' receipt in full given; neither plaintiffs nor their agent signed the composition agreement; the note given under the arrangement was paid at maturity. In an action to recover the balance of the original indebtedness, *held*, that defendant was liable; that the evidence failed to show plaintiffs intended to or did unite with the other creditors in the general scheme of compromise; and that there was no new consideration sufficient to sustain the agreement or to constitute an accord and satisfaction.

The acceptance of the draft did not amount to a new consideration, as it was simply a mode of paying the money.

*It seems* that if the agreement had been to accept the draft in lieu of plaintiffs' claim, there would have been a sufficient consideration to sustain the compromise.

*Bliss et al.* v. *Shwarts* (7 Lans., 186; 64 Barb., 215) reversed.

(Argued May 5, 1875; decided May term, 1875.)

APPEAL from order of the General Term of the Supreme Court in the first judicial department reversing a judgment in favor of plaintiffs, entered upon a decision of the court on trial without a jury. (Reported below, 7 Lans., 186 ; 64 Barb., 215.)

This action was, in form, for goods sold and delivered.

The following facts were substantially found : The plaintiffs, who were partners doing business at New York, sold and delivered goods to the defendant, doing business at Galveston, Texas, to the value of $4,634.84, for which the defendant gave his note at four months, due January 6, 1866. In January, 1867, the plaintiffs sent this note to George Butler & Co., collecting agents at Galveston, Texas, for collection. The note had been reduced, by payments on account, to $3,659.55, including interest. In August, or in the fall of 1867, the defendant failed in business. He was at that time indebted to different parties to the amount of $38,000 and upwards. On or about May, 1868, he offered a composition to his creditors, including the plaintiffs, of twenty-five cents on the dollar, payable in twelve months from date, without interest, and to be accepted in full. A number of the creditors (not including the plaintiffs) signed a composition agreement, whereby they agreed to accept, in full settlement of their claims, the sum of twenty-five cents on the dollar, payable one-half in cash upon the completion of the settlement,

and one-half in the defendant's note, payable in twelve months from date, without interest. Early in May, 1868, one Clegg, of Galveston, a member of the firm of George Butler, & Co., called upon the plaintiffs in the city of New York, and applied to them to accept the above composition for their claim against the defendant, informing them that it had been, or was about to be, effected with all his other creditors. The plaintiff Bliss replied that he would not then accept the proposition. On or about May 14, 1868, Mr. Clegg had a second interview in reference to the said composition with the plaintiff Bliss, when he said that the whole matter was in the hands of Mr. Phillip W. Kopper, who was then in Texas, and that whatever he did in reference to compromising their claim against the defendant would be acceptable to the plaintiffs, and that the plaintiff Bliss would do nothing about a compromise in New York. This conversation was telegraphed to Mr. Clegg's partner, George Butler, at Galveston. In June, 1868, at Mr. Butler's office, in Galveston, Phillip W. Kopper, acting for the plaintiffs, agreed upon a settlement of their claim against the defendant. The terms were twenty-five per cent, one-half in cash, and one-half in the defendant's note at twelve months, and, in addition thereto, $250 cash, added to the cash payment, and fifty dollars added to the note.

The judge further found that, to carry out this settlement, Mr. Butler gave Kopper the draft of his own firm in favor of the plaintiffs, drawn upon Duncan, Sherman & Co., of the city of New York, for the sum of $629.25, the amount of the cash payment, deducting Butler & Co.'s commissions. Butler also delivered to Kopper the note of the defendant, at twelve months, for $507.25. This was paid at maturity by Butler's firm for the defendant. It was also found that Butler, in this transaction, acted for the defendant. Kopper, as a part of the transaction between the plaintiffs and the defendant, gave a receipt in full settlement of all claims of the plaintiffs, and surrendered the original note to him.

On this state of facts, the defendant claimed that he was not liable to the plaintiffs for the balance of their claim

remaining unpaid, as the dealings between the parties amounted to an accord and satisfaction.

The court directed judgment for the plaintiffs for the balance of their claim remaining unpaid. The General Term reversed this judgment, on the ground that the cash payment, being in the form of a draft of George Butler & Co. on Duncan & Sherman, and received by Kopper instead of cash, was sufficient evidence of an accord and satisfaction to bar the plaintiffs' action.

*Samuel Hand* for the appellants. The alleged compromise of the balance due plaintiffs was not a valid defence to their claim, it being for a less amount. (*Hill* v. *Beebe*, 13 N. Y., 556; *Keeler* v. *Salisbury*, 33 id., 645; *Cole* v. *Sackett*, 1 Hill, 516; *Buckingham* v. *Oliver*, 3 E. D. S., 129.) Had the draft not been honored, defendant would not have been released from his agreement to pay the cash. (*Noel* v. *Murray*, 3 Kern., 167; *Gibson* v. *Tobey*, 46 N. Y., 637; *Bunge* v. *Koof*, 5 Robt., 1.) Butler & Co., acting as agent for defendant, furnished the draft on New York, and this will be presumed to be the principal's fund. (*Porter* v. *Talcott*, 1 Cow., 358, 381; *Davis* v. *Allen*, 3 Comst., 166.)

*Jno. E. Parsons* for the respondent. The draft on Duncan, Sherman & Co. furnished ample consideration to sustain the compromise. (*Brooks* v. *White*, 2 Metc., 283; *Kellogg* v. *Richards*, 14 Wend., 116; *Keeler* v. *Salisbury*, 33 N. Y., 648, 653.) In a transaction effected through an agent, notice to and knowledge by the agent binds the principal. (1 Pars. on Con., 64–66; *Bk. of U. S.* v. *Davis*, 2 Hill, 451; *Boyd* v. *Vanderkemp*, 1 Barb. Ch., 287; *Willis* v. *Bk. England*, 4 A. & E., 21, 39.) Assent to a composition may be as well by surrendering the debt and taking composition notes as by signing and sealing a composition deed, as between a debtor and creditor. (*Fellows* v. *Stevens*, 24 Wend., 294.) It need not extend to all the creditors. (*Norman* v. *Thompson*, 4 Ex., 754.) Such composition may be by parol, the debt being

a simple contract. (*Fellows* v. *Stevens*, 24 Wend., 294; *Bradley* v. *Gregory*, 2 Camp., 385; *Williams* v. *Carrington*, 1 Hilt., 515; *Butler* v. *Rhoodes*, 1 Esp., 236; *Brady* v. *Skeel*, 1 Camp., 147; *Steinman* v. *Magnus*, 2 id., 124; *Thomas* v. *Courtnay*, 1 B. & A., 1.) It does not matter that the other creditors signed before plaintiffs completed the settlement on their part. (*Hall* v. *Merrill*, 9 Abb., 116; *Renard* v. *Tuller*, 4 Bosw., 107.) Plaintiffs cannot take advantage of the additional $300 they exacted. (*Mallalieu* v. *Hodgson*, 5 E. L. and Eq., 279; *Page* v. *Carter*, 16 N. H., 254.)

DWIGHT, C. Unless the settlement by the plaintiffs with the defendant can be shown to have been based on some sufficient consideration, the arrangement entered into by them was inoperative and void, and the defendant is still liable. This is an elementary rule of law, and is not denied by the defendant. (*Bunge* v. *Koop*, 48 N. Y., 225, 228; *Harrison* v. *Close*, 2 J. R., 448; *Cole* v. *Sackett*, 1 Hill, 517.)

The defendant, however, claims that the case is taken out of the general rule, for two reasons: First, because the arrangement between the plaintiffs and the defendant was part of a general scheme of compromise by the defendant with his creditors. Second, because the acceptance by Kopper (acting for the plaintiff) of the draft of Butler & Co. on Duncan & Sherman, was sufficient evidence of a new consideration to uphold the transaction, even though the plaintiffs did not participate in the general plan of compromise.

I. There is not sufficient evidence to show that the plaintiffs intended to unite with the other creditors in the general scheme of adjustment. It cannot be doubted that the plaintiffs had the absolute right to refuse to enter into any arrangement on the subject, and might insist upon the payment to them of the whole debt. The debtor must, accordingly, show by satisfactory evidence that the plaintiffs contemplated an arrangement whereby they should, for a valid consideration, receive less than their debt and discharge the residue. Instead of that, the testimony, so far as it goes, is adverse to the view

that they intended to unite with the other creditors. When Mr. Bliss, one of the plaintiffs, was approached in May, 1868, by Mr. Clegg, acting for the defendant, and was told that a compromise had been or was about to be effected with all the other creditors for twenty-five cents on the dollar, and was asked if he, acting for his firm, would come in and compromise on the same basis, he replied that he would not *then* accept the said proposition. It would be too much to argue from the use of the word "then," that he made any implication that he would sign thereafter. The fair construction of his remarks, simply that he was not willing with his then existing views to concur with other creditors. At a later interview, he said to Mr. Clegg that the entire matter was in the hands of Mr. Kopper, who was then in Texas, and that whatever Kopper did in reference to compromising the claim would be satisfactory to him, but that he would make no settlement in New York city. This conversation having been telegraphed to Mr. Clegg's partner, all future negotiations were transacted in Texas, between Mr. Kopper and the firm of Butler & Co.

I see no reason for presuming that Kopper was acting to forward the general scheme of adjustment. If so, why should the scene of operations be transferred to Texas? If the plan submitted in New York, was to be adopted by the plaintiffs there was nothing to be done except to affix their signatures to the agreement already drawn. The plaintiffs certainly misled no creditor in New York. None of them could have acted on the supposition that Mr. Bliss and his partners would co-operate with them. If these gentlemen had resolved, as they undoubtedly had a legal right to do, to remain unconnected with the general plan of compromise, how could they have pursued any different course of action from that which they adopted? It should be added that Kopper did not even avail himself of the per centage assented to by the other creditors, but exacted a larger sum. This he might legally insist upon, unless he acted fraudulently or clandestinely, so as to contravene a rule of public policy. But as he acted openly

and without any apparent intent to participate with other creditors, his conduct is some evidence that his arrangement was distinct from that of the others. In the absence of all evidence, it is not fair to presume that Kopper was practicing a fraud upon other creditors and securing secretly, and in opposition to the policy of the law, a larger per centage than others. Any such presumption is avoided, by giving the ordinary and natural construction to his acts, and those of the plaintiffs, which is, that they evince a design to make a distinct and separate negotiation with the defendant.

On the whole, the defendant has not sufficiently established the proposition that the plaintiffs themselves personally, or through their agent, Kopper, participated in the plan of compromise, to induce us to overturn the conclusions of the judge at the Circuit.

II. We have also reached the conclusion that the second point of the defendant is not well taken. The evidence is entirely clear that the payment to be made to the plaintiffs was to be in cash. It was then shown in evidence that to "carry out this settlement" Mr. Butler gave his draft on Duncan & Sherman, to Kopper, acting for the plaintiffs. Mr. Butler, in perfecting the transaction, was acting as agent for the defendant. Although some question was made upon this point at the trial, we think it sufficiently established by the evidence.

Under this state of facts, there was no new consideration advanced to the plaintiffs sufficient to constitute an accord and satisfaction. The draft must be regarded merely as a mode of paying the cash. It must be remembered that the defendant already owed all the money to the plaintiffs which they received. At the time of the receipt of the draft, the proposed compromise being void, the defendant must be regarded simply as paying to his creditors a portion of his indebtedness. The draft was presumptively but a *means of payment*. Suppose that Duncan & Sherman had failed as well as Butler before the payment of the draft, would the debt of the defendant have been discharged? Clearly not. (*Noel* v. *Murray*, 13 N. Y., 167; *Waydell* v. *Dun*, 3 Den., 410, and

cases cited.) A very different question would have been presented if the agreement had been to take the draft of Mr. Butler in lieu of the plaintiffs' claim. In that case, there would have been a sufficient consideration. But as the agreement was for cash, the act of carrying out that agreement by means of a draft was only a mode of paying the cash, or, in other words, discharging a portion of the defendant's debt. This point is substantially decided in *Bunge* v. *Koop* (48 N. Y., 229). It was claimed, in that case, that as third persons had furnished the debtor with their checks to pay the amount of the invalid compromise, that this was a sufficient consideration to uphold it. The court said: " It matters not that the $3,500 which the defendants received from their friends was in the checks which they handed over to the plaintiffs. If the plaintiffs had agreed to receive the notes of a third party, or any specific personal property, in payment and satisfaction of their claim, it would have been fully paid and satisfied, no matter how small the value of the note or property was. But here the agreement, as alleged in the answer, and proved, was, that the defendant should pay the $3,500 in money, and this they undertook to do in the checks — they were paid and received as money."

If, in the case at bar, the defendant had been present when the cash was to be paid, and had handed over to the plaintiffs the draft of Mr. Butler, the case would have been closely analogous to that of *Bunge* v. *Koop*. The fact that Butler did the act, instead of the defendant, is not material. The substance of the transaction is the same. I do not regard it as material to inquire whose money was used to procure the draft. There was no bargain that Mr. Butler's money should be used, or that his draft should be taken. That was but an incidental matter connected with the principal act, which was the payment of cash by the defendant. What disposes of the case is, that from whatever source the money was derived, no new consideration sprang up between the plaintiffs and the defendant to bring the original debt within the rules of an accord and satisfaction.

Some criticism was made upon the conduct of the plaintiffs, on the view that, if this action was sustained, they had succeeded in perpetrating a fraud upon the defendant. This, however, is unwarranted. There is no fraud in the case of which a court of justice can take cognizance, whatever may be thought of the morality of the transaction. The law, for general reasons, has made a consideration necessary to the validity of all such transactions as are now under discussion. If the application of that rule works a hardship in some instances, and is used by unscrupulous men for the purposes of deception, the remedy is with the legislature and not with the courts. Accordingly, such considerations can have no influence upon the decision of the present question.

The General Term of the Supreme Court erred, accordingly, in reversing the judgments entered at the Circuit. Its order should be reversed, and that entered at the Circuit affirmed.

All concur.

Order reversed and judgment of trial court affirmed.