## CUNNINGHAM *v.* IRWIN.

1. ACCORD AND SATISFACTION—PAYMENT—COMPROMISE.

> The rule of law is generally recognized as well settled by the great weight of authority that payment of less than the full amount of a past-due, liquidated, and undisputed debt, although accepted and receipted for as in full satisfaction, is only to be treated as a payment *pro tanto*, and does not estop the creditor from suing and recovering the balance.[1]

2. SAME—EXCEPTIONS.

> The following exceptions to this general rule are recognized: when the claim is unadjusted or unliquidated; when payment is made before it is due; when a new security is given; when there is a composition with creditors and where part payment in full settlement is made by a third party who is a stranger to the claim and under no legal obligations in relation to it.[2]

3. PRINCIPAL AND AGENT—CONTRACTS—PAYMENT.

> The question whether an agency exists is a mixed question of law and fact.

4. SAME.

> A gratuitous payment, though made upon request, by a father, of his son's debts, to which he is a stranger and for which he is not legally responsible, does not necessarily involve an agency in law: one may act in the interest of another, with or without his knowledge, without becoming technically his agent.

5. ACCORD AND SATISFACTION — COMPROMISE — PRINCIPAL AND AGENT.

> Where defendant's father gratuitously undertook to pay his obligation that was due to plaintiff, paying in full satisfaction and settlement of the debt a less sum, without any consideration or promise of the son to pay back the

---

[1] On the question of accord and satisfaction by part payment of liquidated and undisputed demands, see note in 45 L. R. A. (N. S.) 1063.

[2] As to the effect of payment of debt by a volunteer or stranger to the original undertaking, see note in 23 L. R. A. 120.

amount advanced for this purpose, which was withdrawn from the private funds of the parent, and where the son did not bring about this arrangement, and where plaintiff intended to and did deal with the father as principal, looking to him and receiving the funds in settlement, it was a valid accord and satisfaction for a series of notes which defendant had executed to plaintiff in adjustment of a balance due on an open account.

Error to Macomb; Tucker, J. Submitted June 8, 1914. (Docket No. 37.) Decided October 2, 1914.

Assumpsit in justice's court by John A. Cunningham against Alphonso J. Irwin upon five promissory notes. From a judgment for plaintiff, defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Reversed.

*Silas B. Spier* (*William F. Sawn*, of counsel), for appellant.

*William S. Jenney*, for appellee.

Steere, J. This case involves the question of an alleged discharge of debt by way of accord and satisfaction through payment by or through a third party of less than the demand, which was accepted and receipted for by the creditor as a settlement in full.

The action was commenced August 13, 1912, in a justice's court of Macomb county to enforce payment by defendant of five promissory notes of $50 each, given by him to plaintiff, on June 19, 1908, at Jacksonville, Fla., where they both then resided. Plaintiff was in the furniture business, and defendant, who at that time was running a restaurant and hotel there, had dealt with him, buying furniture, rugs, etc. These notes are the last of a series, aggregating $943.30, given in adjustment of, and to cover, a balance then owing on his account. They are serially numbered, and due a month apart, the last one falling due 18

months after date. The earlier notes of the series were paid. Defendant subsequently removed to Mt. Clemens where he resided when this suit was begun.

On the return day of the summons, August 22, 1912, plaintiff declared orally on the common counts and specially on the five notes. Defendant orally pleaded the general issue and statute of limitations. The cause was then adjourned until September 10th, when trial was had. At that time, by permission of the court, defendant withdrew his former plea, and by a plea *puis darrein continuance* claimed settlement and satisfaction of plaintiff's demand, producing and offering in evidence receipts in full therefor given defendant's father. Objections to this evidence were sustained by the justice, and judgment rendered upon the notes and interest in the sum of $300, the limit of jurisdiction of that court. From this judgment defendant appealed to the circuit court, where the case was tried without a jury.

It appears undisputed from the evidence and findings of the court that defendant's father, R. L. Irwin, who resided at Jacksonville, Fla., was an old acquaintance of plaintiff, and in an interview with the latter in his store an agreement was entered into between the two, on August 27, 1912, by which R. L. Irwin paid plaintiff $125 in full of all demands against his son, including these five notes, plaintiff agreeing to write his Mt. Clemens attorney to deliver up the notes upon which suit had been brought, at that time giving R. L. Irwin the following receipt:

"JACKSONVILLE, FLORIDA, Aug. 27, 1912.
"Received of Mr. Raymond L. Irwin, address St. Augustine, Florida, one hundred and twenty-five dollars ($125) on account, subject to agreement, account Alphonso J. Irwin in full.
"No. 13528.          JOHN A. CUNNINGHAM,
                                        "By D. C. CORUS."

Subsequently, but bearing the same date, apparently to make more clear the "agreement" of the first receipt, plaintiff gave him the following receipt:

"JACKSONVILLE, FLORIDA, August 27, 1912. .
"Received of Raymond L. Irwin for account of Alphonso J. Irwin, one hundred and twenty-five ($125.00) dollars in full of all demands, including five (5) notes forwarded to our attorney, William S. Jenney, Mt. Clemens, Michigan, for collection.
                    [Signed] "JOHN A. CUNNINGHAM."

On September 12, 1912, plaintiff gave the following letter, addressed to his Mt. Clemens attorney, to R. L. Irwin, who at once forwarded it to defendant at Mt. Clemens:

"JACKSONVILLE, FLA., September 9, 1912.
"MR. WM. S. JENNEY,
    "Attorney at Law,
        "Mt. Clemens, Mich.
"Dear Sir:
    "This will confirm our letter to you of August 27th. Kindly surrender the five notes, which you were handling for collection, to Mr. Irwin, as we have accepted his check at this end of the line in settlement of the matter.
                "Yours respectfully,
                "JOHN A. CUNNINGHAM,
                    "D. C. CORUS, Manager."

Plaintiff's attorney refused to recognize this settlement, and proceeded with the suit as stated, treating the $125 as payment on account. His reasons and position in the matter are embodied in the following motion to strike out evidence of such settlement:

"There is no question about it in this State that a compromise where a man pays you $125 in settlement of a $300 claim and receives from the creditor a promise to accept that in full settlement is absolutely void, and it does not bar recovery unless there is some consideration other than the $125, and no consideration other than that has been shown, and I think that re-

ceipt should be stricken out until such time as such consideration is shown."

Against this defendant's counsel contended that the demand was in dispute, and not liquidated; that the money was paid in settlement of a suit then at issue involving a legal controversy, and by a third party who was a stranger to the indebtedness, under no legal obligation in that connection.

The rule of law is generally recognized as well settled by the great weight of authority that a payment of less than the full amount of a past-due, liquidated, and undisputed debt, although accepted and receipted for as in full satisfaction, is only to be treated as a payment *pro tanto,* and does not estop the creditor from suing for and recovering the balance. This is ancient bench law, supported by no statutory authority or rule of property, and, though often criticised as unreasonable, unfair, and unjust, it is said its long and general acceptance commends itself to the courts with almost irresistible force. This aspect of the rule is commented on in *Tanner* v. *Merrill,* 108 Mich. 58 (65 N. W. 664, 31 L. R. A. 171, 62 Am. St. Rep. 687), which, however, recognizes the rule, and in 1 R. C. L., p. 185, with many authorities cited, where it is said:

"And as it is rigid and unreasonable and defeats the express intention of the parties, it should not be extended to embrace cases not within the very letter of it."

The reason upon which the rule is now held to be founded is that such agreement is without consideration, which appears to be equally satisfying as that of Lord Coke, who, in an early day, pronounced it a proper rule "because it appears to the judges that by no possibility a lesser sum can be a satisfaction for a greater sum." In a number of States the rule has been abrogated by statute, and in a few repudiated by the courts. Of the latter are *Clayton* v. *Clark,*

74 Miss. 499 (21 South. 565, 22 South. 189, 37 L. R. A. 771, 60 Am. St. Rep. 521), and *Frye* v. *Hubbell*, 74 N. H. 358 (68 Atl. 325, 17 L. R. A. [N. S.] 1197), where the subject is entertainingly reviewed.

The rule is, however, recognized in this State in line with the weight of authority which now recognizes numerous ·exceptions, amongst which are: When the claim is unadjusted or unliquidated; when payment is made before it is due; when a new security is given; when there is a composition with creditors; and where part payment in full settlement is made by a third party who is a stranger to the claim and under no legal obligations in relation to it. While this court, in accepting the general rule, has had little occasion to deal with these exceptions, they are well settled by almost universal weight of authority.

Defendant claimed and introduced testimony, against objection, to show that, although notes were given in adjustment of his account, the goods purchased from plaintiff had not all then been delivered, and some of them proved not to be as represented, that he had claimed a rebate, and that he notified the plaintiff, who promised to make it right, or make a reduction on the last payment. This claim was very flatly disputed and met by testimony which we think fully sustained the finding of the court that the claim was liquidated, and—

"That the notes in question in this suit were given in settlement for whatever account the defendant then owed the plaintiff, and the defendant cannot now be heard to say that this controversy was still open and subject to further compromise on the 27th day of August, 1912."

Plaintiff makes no denial or explanation of the settlement with R. L. Irwin, nor the written evidence of it, nor the circumstances as related by the latter, although plaintiff's testimony was taken by deposi-

tion, with his counsel present, after the settlement was pleaded. He ignores the subject in his testimony, which is devoted to the nature of the consideration for the notes, the circumstances of giving them, denial that any question of rebate was left open, and, in general, to sustaining them as a valid, liquidated demand. The only evidence of his repudiating the settlement is the continuance of the litigation.

The trial court was of the opinion the fact that a suit was pending which would be stopped by the settlement would not be a new consideration which rendered the compromise valid, and, amongst other things, said:

"It is contended by the plaintiff that the settlement made by Raymond L. Irwin in Florida was really a settlement by the defendant through him. On the other hand, it is the claim of the defendant that the settlement by Raymond L. Irwin was made on his own account, although with the knowledge and consent of the defendant. * * * This question of whether the payment made by R. L. Irwin by check on R. L. Irwin's own private account, although the payment was directed by and made for A. J. Irwin, amounted to a valid discharge of the entire debt is really the only question in the case."

Based upon the assumption or finding that the payment was directed by and made for A. J. Irwin, and consequently to be construed as if he had himself made the same in settlement of his notes, the court found, as a conclusion of law, that the case was governed by, and could not be distinguished from, *Bliss* v. *Shwarts,* 65 N. Y. 444, in which it was held, under the circumstances of that case, that where an agent of the debtor negotiated a settlement with the creditor for less than the full amount of the debt, and closed the transaction by giving his own draft in lieu of the money, which was accepted and receipt given in full settlement of the debt, the acceptance of the draft in-

stead of cash did not amount to a new consideration, and recovery could be had for the balance of the original indebtedness.

Agency is a mixed question of law and fact, and to ascertain if this conclusion of law is supported by any legal evidence resort must be had to the testimony. The only testimony bearing on this claim of agency is that of the defense, and is undisputed. Defendant himself testified that the first notice he had that the notes were sent to an attorney for collection was when he was served with a summons by the sheriff, which he took to an attorney, and he afterwards wrote his father, with whom he regularly corresponded, mentioning this and telling him the situation. Plaintiff's counsel relied upon, and the court accepted as conclusive proof of agency, an affidavit of R. L. Irwin filed in the case, over the admission of which there was a controversy we do not deem it important to consider here, in which he briefly relates the circumstances of the settlement made by him with plaintiff, saying, in part, that:

"The said sum of $125 paid by him * * * was in full settlement and satisfaction of said notes of A. J. Irwin, and was paid at the request of said A. J. Irwin, for him, the said A. J. Irwin."

Relying upon and quoting this language as sufficient proof of agency, the court found:

"If this is true, the matter is to be considered as if A. J. Irwin had himself paid the $125 in settlement of the notes in question."

R. L. Irwin does not say the $125 was paid with his son's money, or even on any promise of the son ever to pay it, or on any agreement with the son to pay it for him, but, on the contrary, testifies positively that he independently made the settlement with plaintiff, paying the amount agreed upon with his own

money drawn from his private account, without any arrangement or agreement with his son to reimburse or remunerate him for any expense and service in making the settlement. He states: That he was an old acquaintance of plaintiff, who, at about the time of sending the notes to an attorney for collection, told him of it, and witness said in reply:

"I don't think it requires a suit against the boy, and let me know what the amount (account) can be settled for, and perhaps you and I can settle, and he went into his office and saw his manager and said he would settle and for me to make an offer."

That thereupon they went over the matter, negotiated and settled as stated, plaintiff stating amongst other things: When a settlement was reached and the $125 paid, that A. J. "Irwin's account was closed in full."

A gratuitous payment, though on request, by a father of his son's debts, to which he is a stranger and for which he is not legally responsible, does not necessarily involve an agency in law. It is elementary that one may act in the interest of another, with or without his knowledge, without becoming technically his agent. An agency in legal concept is a legal contract, and, to be binding, must possess all the legal elements of a contract, amongst which is a valid consideration. Plaintiff is now seeking to defeat this very settlement because it was void for want of a consideration, and by claiming a contract of agency in which he fails to show consideration, and which the testimony shows was without promise of reward or even reimbursement.

Conceding any elements of agency shown, they were gratuitous and undisclosed. Plaintiff manifestly intended to, and did, deal with the father as a principal, looking to him for and receiving from him the money paid in settlement.

In the foregoing and other particulars the case of *Bliss* v. *Shwarts, supra,* is distinguishable. In that case the settlement was effected by and through George Butler & Co., firm of collecting agents, professionally acting as such, their agency for the debtor being a pure business matter, known and understood by all parties. A question of composition with the defendant's creditors was involved, and they were active in his behalf in that respect. Plaintiff refused to accept the general proposition of settlement offered to creditors. Negotiations were had in which a settlement was reached between the parties for a payment by defendant of a certain sum "in cash." "To carry out this settlement," Mr. Butler gave his draft to the agents of plaintiff, for and with his firm acting as agent of defendant in perfecting the transaction. The court held this was no new consideration from a third party, but simply a "means of payment," and said:

"A very different question would have been presented if the agreement had been to take the draft of Mr. Butler in lieu of the plaintiff's claim. * * * There was no bargain that Mr. Butler's money should be used, or that his draft should be taken. That was but an incidental matter connected with the principal act, which was the payment of cash by the defendant."

In this case it is undisputed that the bargain was that R. L. Irwin's money should be used, or his check taken in lieu of plaintiff's claim, which was the principal act, with no suggestion between the contracting parties that defendant was to pay anything.

In this case the evidence is undisputed that when the settlement was consummated R. L. Irwin (irrespective of at whose request or whether he was reimbursed later) made his own bargain with, and paid his own money to, plaintiff, which is the gist of the third party exception to the general rule. The agree-

ment contemplated furnishing the money by a third party, and it was so furnished; the money paid never belonged to the debtor and a new consideration moved from said third party for plaintiff's benefit. When this is true the questions of agency and request are not necessarily controlling. In 2 Chitty on Contracts (11th Am. Ed.), p. 1133, it is said:

"But the correct doctrine would appear to be that satisfaction made by a stranger to a party having a cause of action, and adopted by the party liable to the action, is a good bar to an action for such cause. And so it would seem that, if the defendant and the party from whom the satisfaction proceeded, stood in the relation of principal and agent, such satisfaction would be a good bar for the defendant."

In volume 1 of Ruling Case Law, a work assuming to winnow by a process of judicial and editorial selection the essence and drift of leading decisions, the law upon this question is thus stated, on page 193, § 28:

"The view that such a part payment may so operate is another well-settled exception to the general rule as regards part payments of liquidated demands, and it is settled that if part payment is made by a third person at the request of and with the authority of the debtor, and is received by the creditor in full satisfaction, there is a good accord and satisfaction, as the creditor receives a benefit in securing the payment by such third person; otherwise, due to the financial condition of the debtor, he may not have been able to secure payment of any part of the debt."

We are of opinion there is no testimony in this case to sustain the finding that there existed a contract of agency of legal force to defeat the third party exception to the rule plaintiff invokes, that the record conclusively discloses a settlement made with and payment of his own money by a volunteer, third party, a stranger to the demand and under no legal

obligation to pay it; that it was by authority of the debtor; was received and receipted for by the creditor in full satisfaction of his claim; and that it operated as a valid accord and satisfaction between the parties to this action.

The judgment is reversed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.