[No. 27779.   Department One.   September 16, 1940.]

JOHN T. WELSH et al., Appellants, v. LENA H. LOOMIS et al., Respondents.[1]

[1]Reported in 105 P. (2d) 500.

*W. H. Abel* and *Charles B. Welsh,* for appellants.

*Emil S. Bitar,* for respondents.

ROBINSON, J.—This action was brought by John T. and Martin C. Welsh to cancel a satisfaction of mortgage, upon the ground that it was procured by fraud, and to foreclose the mortgage, when reinstated. During the pendency of the appeal, Martin C. Welsh died, and his executrix, Charlotte B. Welsh, has been substituted as appellant in his stead.

The amount involved is less than two hundred dollars, and the respondents have moved to dismiss the appeal. But the action is clearly equitable. The motion must, therefore, be denied. *Lloyd v. Reinard,* 130 Wash. 454, 227 Pac. 855.

It was admitted, or shown, at the trial, without dispute or contradiction, that, on July 10, 1933, Lena H. Loomis, wife of the codefendant, L. E. Loomis, executed and delivered to John T. Welsh and Martin C. Welsh, copartners, her promissory note for five hundred dollars, due one year after that date. After it became due, frequent demands were made upon her for payment, and foreclosure was threatened. On November 9, 1935, certain funds belonging to the Loomises came into the hands of Welsh & Welsh, and a portion of these funds, amounting to $276.45, was applied in part payment of the note.

No further payment was made on the note until August 5, 1938. As to what occurred on that day, the evidence is in sharp conflict. The plaintiffs alleged, and submitted evidence tending to prove, that L. E. Loomis represented to John T. Welsh,—the note and mortgage and the accounts relating thereto being kept

in the office of Martin C. Welsh,—that but one hundred and fifty dollars remained due, and by such false representation induced John T. Welsh to accept that amount as payment in full and to satisfy the mortgage and agree to surrender the note.

Loomis and his daughter testified, however, that they went to the office of John T. Welsh, and, finding there one of his sons, Loomis asked him how much they would take to settle the mortgage; that the son replied that he would take it up with his father at lunch time; that, after lunch, they went back to the office and the son told them that he had talked the matter over with his father and that they would accept two hundred dollars. Loomis testified:

"I told him that I could not pay two hundred dollars, that I could pay one hundred and fifty dollars right now, and Burke said All right we will let it go for one hundred and fifty dollars. So I handed the girl a check, a blank check and she made it out to John T. and I signed it and gave it to Burke."

It is agreed that the parties then went to the residence of John T. Welsh and took him to the courthouse, where he executed the marginal satisfaction and promised to send Loomis the note as soon as he could procure it. This, however, was not done.

The trial judge, after observing that a charge of fraud must be proven by clear and convincing evidence, declined to find that fraud had been shown. As the trial judge saw and heard the witnesses, we will not disturb that finding. In fact, the appellants, while insisting that the finding was wrong, being attorneys and, therefore, familiar with the rule which obtains in such circumstances, do not seriously urge that we should.

They, however, vigorously contend that there was no consideration for the discharge of the indebted-

ness, since Loomis admittedly paid less than was legally due; citing *Graham v. New York Life Ins. Co.*, 182 Wash. 612, 47 P. (2d) 1029; *Anderson v. Sanitary Dairy*, 160 Wash. 647, 295 Pac. 925; *Seattle Investors Syndicate v. West Dependable Stores*, 177 Wash. 125, 30 P. (2d) 956, and other cases. The rule invoked and the basis upon which it rests are tersely stated in the first of the cases cited, in the following language:

"Where the debtor pays what in law he is bound to pay and what he admits that he owes, such payment by the debtor and its acceptance by the creditor, even though tendered as payment in full of a larger indebtedness, do not operate as an accord and satisfaction of the entire indebtedness, because there is no consideration therefor."

But Loomis was not "the debtor." He did not sign the note and was not "bound to pay" anything. It is not contended that he was. No money judgment was asked against him. He was made a defendant merely upon the allegation that he claimed some right, title, or interest in the mortgaged property.

The law governing the situation presented is stated in a note in 41 A. L. R. 1490, as follows:

"The general rule that part payment of a liquidated indebtedness is no consideration for the discharge of the entire debt [1 R. C. L. 184] was a deduction of strict scholastic logic, and has always been regarded as technical and unjust, and the modern tendency of the courts has been to enlarge the exceptions to this rule in order to avoid its harshness, and to carry into effect settlements, adjustments, and compromises, and one of these exceptions is where the part payment is made by or with the aid of a third person."

See, as to the exception, 4 Page on The Law of Contracts (2d ed.), 4425, § 2508; 1 Williston on Contracts (Rev. ed.), 431, § 125; 2 Restatement of Contracts, 793, § 421.

Among the many supporting cases cited in the above mentioned note and texts, the following are illustrative: *Clarke v. Abbott,* 53 Minn. 88, 55 N. W. 542, 39 Am. St. 577; *Barnett v. Rosen,* 235 Mass. 244, 126 N. E. 386, where a wife paid a smaller sum than was legally due in satisfaction of an execution issued against property belonging to her husband; and *Cunningham v. Irwin,* 182 Mich. 629, 148 N. W. 786, where a father paid one hundred and twenty-five dollars to discharge a three hundred dollar debt of his son. In this case, the court said, in part:

"The rule of law is generally recognized as well settled by the great weight of authority that a payment of less than the full amount of a past-due, liquidated, and undisputed debt, although accepted and receipted for as in full satisfaction, is only to be treated as a payment *pro tanto,* and does not estop the creditor from suing for and recovering the balance. This is ancient bench law, supported by no statutory authority or rule of property, and, though often criticised as unreasonable, unfair, and unjust, it is said its long and general acceptance commends itself to the courts with almost irresistible force. This aspect of the rule is commented on in *Tanner v. Merrill,* 108 Mich. 58 (65 N. W. 664, 31 L. R. A. 171, 62 Am. St. Rep. 687), which, however, recognizes the rule, and in 1 R. C. L., p. 185, with many authorities cited, where it is said:

" 'And as it is rigid and unreasonable and defeats the express intention of the parties, it should not be extended to embrace cases not within the very letter of it.'

"The reason upon which the rule is now held to be founded is that such agreement is without consideration, which appears to be equally satisfying as that of Lord Coke, who, in an early day, pronounced it a proper rule 'because it appears to the judges that by no possibility a lesser sum can be a satisfaction for a greater sum.' In a number of States the rule has been abrogated by statute, and in a few repudiated by the courts. Of the latter are *Clayton v. Clark,* 74 Miss.

499 (21 South. 565, 22 South. 189, 37 L. R. A. 771, 60 Am. St. Rep. 521), and *Frye v. Hubbell*, 74 N. H. 358 (68 Atl. 325, 17 L. R. A. [N. S.] 1197), where the subject is entertainingly reviewed.

"The rule is, however, recognized in this State in line with the weight of authority which now recognizes numerous exceptions, amongst which are: When the claim is unadjusted or unliquidated; when payment is made before it is due; when a new security is given; when there is a composition with creditors; and *where part payment in full settlement is made by a third party who is a stranger to the claim and under no legal obligations in relation to it.* While this court, in accepting the general rule, has had little occasion to deal with these exceptions, they are well settled by almost universal weight of authority." (Italics ours.)

This court expressed a similar view of the rule as early as 1899. In *Brown v. Kern*, 21 Wash. 211, 57 Pac. 798, Judge Dunbar, speaking for the court, said:

"The theory of the law doubtless is that no benefit accrued to the creditor in accepting a portion of a debt where the debtor was legally bound to pay the whole debt, and that, therefore, there was no consideration for the contract made and entered into by the creditor and debtor for the satisfaction of the judgment or debt by the payment of a part of the same. For many years, however, courts have been dissatisfied with this rule and have refused to extend the doctrine, but have sought to restrict the operation of the rule whenever it was possible. It is certainly not in accordance with ethics, and ought not to be in accord with the rules of law, to allow a creditor to enter into a contract to compromise his debt or judgment, and by reason of that compromise receive an amount of money which he could not have received except through the medium of a compromise, and then allow him to violate his contract on the plea of want of consideration and still retain the fruits of the agreement which he made to compromise. . . .

"In *Kellogg v. Richards,* 14 Wend. 116, it was held that where a creditor, on compromise with his debtor, accepted the note of a third person for a less sum than the debt due to him, in full payment of such debt, the transfer and acceptance of such note could be pleaded as an accord and satisfaction in bar of an action for the recovery of any portion of the debt beyond the sum secured by the note.

"See, also, *Le Page v. McCrea,* 1 Wend. 164 (19 Am. Dec. 469); *Evans v. Wells,* 22 Wend. 324; *Lee v. Oppenheimer,* 32 Me. 253; *Keeler v. Salisbury,* 33 N. Y. 648; *Brooks v. White,* 37 Am. Dec. 95."

Of course, if Loomis, in making the contract with John T. Welsh, acted strictly as his wife's agent and made the payment with her money, the case would not fall within the exception. But no claim is made that he so acted, and no evidence was introduced which indicates that he did. On the other hand, it appears that he paid the one hundred and fifty dollars through the medium of his own check, and upon the last page of their reply brief, the appellants point out that Loomis did not sign the note and was not liable thereon, and that the land mortgaged to secure the note of Mrs. Loomis was her separate property. They go on to say, in the last sentence of the brief:

"Although respondents are husband and wife, they were living separate and apart, the wife residing in Portland, Oregon, and the husband at Ocean Park, Wash. Page 8 of Brief of Respondent."

We cannot assume that Loomis acted as his wife's agent. He may have been protecting the interest which appellants as plaintiffs alleged he claimed in the mortgaged property. At all events, it cannot be said that he paid a less sum than he was legally bound to pay, for it stands admitted that he was not bound to pay anything at all. It must, therefore, be held

that there was legal consideration for the release of the obligation.

The judgment appealed from is affirmed.

BLAKE, C. J., MAIN, MILLARD, and SIMPSON, JJ., concur.

[1]Reported in 105 P. (2d) 505.